**GEORGE v. UNITED STATES.**

No. 8037.

United States Court of Appeals for the
District of Columbia.

Decided Feb. 9, 1942.

Mr. Robert I. Miller, of Washington, D. C., for appellant.

Mr. Dennis McCarthy, Assistant United States Attorney, of Washington, D. C., with whom Mr. Edward M. Curran, United States Attorney, and Mr. Charles B. Murray, Assistant United States Attorney, both of Washington, D. C., were on the brief, for appellee.

Before GRONER, Chief Justice, and STEPHENS and RUTLEDGE, Associate Justices.

STEPHENS, Associate Justice.

The appellant, hereinafter referred to as the defendant, and Stephen T. Povich were jointly indicted for a robbery charged to have been committed upon Howard Edwards in the District of Columbia on April 10, 1941. The defendant was separately tried, found guilty by a jury, and sentenced to imprisonment for one and one-half to four and one-half years in the penitentiary. He moved for a new trial, but this motion was overruled. This appeal was then taken. The charge against Povich was disposed of without trial. The errors urged by the defendant in his brief on appeal concern the admission of certain evidence, the refusal of a requested instruction, and the refusal to grant a directed verdict because of asserted lack of proof of venue. They will be particularized below.

The bill of exceptions shows the evidence to have been as follows: Howard Edwards testified that: At 4:50 a. m. on April 10, 1941, while he was on duty as manager of the "Federal Gas Station, located at 7th and Main Avenue, Southwest," a strange white man, who was not the defendant, entered the office, indicated that he wished to use the rest room, then pulled and pointed a revolver, saying "This is a stick-up," forced him into the ladies' rest room, took $30 from his pocket and took his change carrier, and then closed the door to the rest room—leaving him inside. Shortly thereafter he heard someone say "Drop that gun," and then heard several shots. He then came out of the rest room and saw a policeman chasing the man who had thus held him up.

John L. Sullivan testified that: He was "a member of the Metropolitan Police Force and was attached to Precinct No. 4; . . . there had been a series of hold-ups at the Federal Gas Station, located at 7th and Maine Avenue, Southwest . . . he was assigned to patrol the Gas Station in the event of another hold-up . . . ." At about 4:50 a. m. on April 10, 1941, he was in the men's rest room of the Station with the door but partly closed. He saw a strange white man come into the Station, point a pistol at Edwards, heard him say "This is a stick-up," saw him back Edwards into the ladies' rest room and take money from him. He (Sullivan) came out of the men's rest room, ordered the man to halt and drop his gun, but instead the man ran; again he ordered him to halt, and shot at him, but the man ran down the

street to where an Airflow Chrysler four-door sedan was waiting by the curb, called out "Wait, don't leave me"—the car having begun to move—and then got in and drove off. Several shots were fired at him (Sullivan) from the car.

Detective Sergeant Thompson testified that: "He was a member of the Robbery Squad of the Metropolitan Police Department; . . . on the early morning of April 10, 1941, he received a report of a robbery at the Federal Gas Station at 7th and Maine Avenue, Southwest; . . . on information received, he arrested the defendant, Paul S. George, at the Pennyland Arcade on 9th Street." Thompson then identified the defendant as the same Paul S. George that he had thus arrested, and also identified a typewritten statement as having been taken from and signed by the defendant at detective headquarters shortly after his arrest. He testified that the statements contained in it were made freely and voluntarily, without threats, force or compulsion of any kind. There was no evidence to the effect that the statement was not voluntary, and the same was introduced in evidence. It was in terms as follows:

OFFICE OF THE ROBBERY SQUAD

METROPOLITAN POLICE DEPARTMENT
Washington, D. C.
Thursday, April 10, 1941: 2:06 PM
(Date)
To Paul Simpson George, white, 29 years, 204 E St., N. W.

By Det. Sgt. E. F. Lewis

"You are held in connection with The holdup and robbery of

Howard Edwards, Mgr. at Federal Gas Station at 7th and Maine Ave., S. W., about 4:50 AM this date, April 10, 1941, with a reported loss of $15.00 ·

"You are now requested to make a full and complete statement of the facts of this case, as you know them. First, however, you are advised that you are not compelled to make a statement, and so are making it of your own free will, without force being used against you, and without your being promised any favor or consideration. You are advised that the statement will be used in court at your trial, if needed. Understanding this, are you willing to make a statement?"

Answer: "Yes sir."

STATEMENT:

"I met Teddy Patrick about 1:40 AM this morning in front of Jimmy Lake's on 9th Street. He had his car, an Airflow Chrysler. We picked up his girl friend, Helen Lord, a singer at Jimmy Lake's, and we went to her house about the 5000 block of Kansas Ave.,

N. W. We left her there. We took Mary Ash, 1200 block of 12th St., N. W., home, before we dropped his girl. We left Helen Lord out somewhere around 2:30 AM. Then we came back down to Thompson's Restaurant at 9th and E; we didn't get out of the car, just rode by. We rode around about an hour; then we drove down to 7th and Maine Ave., S. W., and he parked the car there around 7th and K, near this Federal Gas Station. I stayed in the car, and Teddy got out. He disappeared, and was gone about ten minutes. I heard one or two shots, and he come running up the street. I picked him up. He had run past the car, with the guy shooting at him. He got in and said he was shot. I carried him home, 1303 N St., N. W. I helped him get into his room. I stayed with him about a half hour. He told me to go to 1446 N Street and tell "Jeep" that he wanted to see him. Jeep came to the door when I knocked, and I told them Teddy was shot. Some little short fellow went back up to Teddy's with me. I went out then and called a doctor, I don't know his name, but I think it was Republic 6100. I called from Goodacre's at 14th and P, about 6:30 AM. I went back to Teddy's, stayed about ten minutes, and left before the doctor got there. I come down on 9th Street, about 7:30 or 8:00, to Charlie Griffin's barber shop. I went to Joe Law's room, at 709 D St. N. W., and slept a few hours, 2nd floor.

QUESTIONS:

Q—I now show you a photo of Stephen Povich. Is this the man you know as Teddy Patrick? A—Yes, that's the man.

Q—Is he the man who was on this holdup this morning, and who was shot? A—Yes.

Q—How much of the money did you get in this robbery? A—None.

Q—Who suggested this holdup? A—He suggested it; he asked me to drive the car. He told me where to drive to, and instructed me to park and wait for him. He told me to keep the motor running.

Q—Did he have a gun when he left you? A—I didn't see one when he left me, but he had one in his hand when he came back.

Q—I now show you a .32 cal. S & W revolver, nickel plated, #460444; is this the gun that Patrick had? A—It was a nickel plated gun; this looks like it.

Q—Did you see him when he fired at the police officer? A—No.

Q—How many shots did you hear fired? A—Either one or two.

Q—You knew when you parked this car to wait for Patrick that he intended to hold up this gas station? A—Yes, he said he was going in there.

Q—How long have you known Patrick? A—About a month.

Q—How did you come to meet Teddy at 2 AM this morning? A—I happened to be there on 9th St. with my girl, and he saw us and said he would take us home.

Q—How many times have you accompanied Patrick while he was taking Helen Lord home? A—At least three times.

Q—Under what circumstances did you first meet Teddy Patrick? A—I believe that it was in the Pennyland, where I occasionally work.

Q—Who took the tags off this car before going on this holdup this morning? A—I don't know that they were off; I believe they were still on the car.

Q—When was the matter of holding up this gas station first mentioned 'between you? A— As we came down 9th Street he said, "Let's go down in Southwest." So he drove on down in Southwest. He said, as we drove along, "I'm going down here and hold up a gas station." He drove around this gas station, Federal Gas Station, and asked me where the man was. I said I didn't see anyone. He then parked the car, and he got out and told me to get under the wheel and wait for him.

Q—When he left you in' the car, did you know that he was going to holdup this gas station? A—Yes. When he left me, he told me to get under the wheel and be ready to drive when he got back, and to keep the motor running. When he came back, he ran by the car, and I drove up to him and picked him up.

Q—Do you want to add anything to your statement? A—No.

Q—Can' you read and write? A—Yes sir.
(Signed) PAUL S. GEORGE

Typed by C. C. Richardson, clerk, Detective Bureau, in presence of Lieutenants Winfree and Thomas and Det. Sgts. Lewis, E. E. Thompson, and J. J. Tolson. Ralph Mitchell was in the room during part of the questioning.
Wit:
(Signed) Det. Sgt. E. E. THOMPSON

The foregoing constituted the Government's case. No evidence was introduced for the defendant.

■ 1. Error is assigned upon the admission of testimony of conversations out of the presence of the defendant. In his brief on appeal the defendant urges that the trial court erred in the admission of the testimony of Officer Sullivan that there had been a series of hold-ups at the Federal Gas Station and that he was assigned to patrol that Station in the event of another. The contention apparently is that this statement by the officer was not one made of his own knowledge but upon the statements of others, and that it was therefore hearsay. Assuming the correctness of this, the officer's testimony was inadmissible. Smith v. United States, 1939, 70 App.D.C. 255, 105 F.2d 778; Mattson v. United States, 8 Cir., 1925, 7 F.2d 427; Bolt v. United States, 1924, 55 App.D.C. 120, 2 F.2d 922; Biandi v. United States, 6 Cir., 1919, 259 F. 93. But the admission of such testimony does not always necessitate reversal. We must give judgment without regard to errors which do not affect the substantial rights of the parties. § 269 of the Judicial Code, as amended by the Act of February 26, 1919, c. 48, 40 Stat. 1181, 28 U.S.C.A. § 391. Whether error is of prejudicial character depends upon the circumstances of the particular case in which it occurs. In the three cases last mentioned it was held that there was prejudicial error in the admission of such testimony. In Smith v. United States we held that there was not, in view of the circumstances there involved and of the fact that the court cautioned the jury not to consider the hearsay as affecting the guilt or innocence of the accused. In the instant case the officer's statement was apparently largely in the nature of an explanation as to how he happened to be in the men's rest room of the Federal Gas Station at 4:50 a. m. on April 10. It is noteworthy further that the officer's statement was admitted without any objection on the part of counsel representing the defendant. Under these circumstances reversal would not be warranted. Fuller v. United States, 1923, 53 App.D.C. 88, 91, 288 F. 442, 445, 446.

■ The assignment of error above referred to apparently includes the admission of the testimony of Edwards and Sullivan that the robber said "This is a stick-up," and of Sullivan that the robber said on approaching the car "Wait, don't leave me," to which testimony objection was made at the trial. But no mention of this is made in the defendant's brief and we regard the error assigned upon it as therefore waived. But aside from this, the statement "Wait, don't leave me" was—when considered in connection with the defendant's confession that he was in the Airflow Chrysler car—made in his presence. Moreover, it was not hearsay but a verbal part of the robber's act of running towards the standing automobile—which act, in relation to the crime charged, was indefinite in character. The words tended to explain it as the return of the robber to a waiting confederate—whom the confession disclosed to be the defendant. Such verbal part of an ambiguous act is admissible in evidence. 6 Wigmore, Evidence (3d Ed. 1940) §§ 1772–1775, inclusive. The words of the robber "This is a stick-up" were, strictly speaking, not within the rule just referred to, because the act of which they were a part—pointing a revolver and taking money—needed no explanation. To be admissible in evidence utterances forming a verbal part of an act must not only characterize conduct independently material to the issue and accompany such conduct, but also they must give legal significance to equivocal conduct. Id. § 1772. "The

utterance serves merely to assist in completing and giving legal significance to the conduct. Hence it is not needed when the conduct is already complete and definite in itself. The conduct must be *equivocal* or incomplete as a legal act, before the utterances can be admissible." Id. § 1774. But the Government had a right to prove the act, subject to connection of the defendant with it, and the admission of the words of the robber was, in view of the clear character of the act, harmless.

▆▆▆ 2. At the close of the case the defendant asked the trial judge to instruct the jury that "There can be no conviction of an accused in a criminal case upon an uncorroborated confession." The judge declined so to instruct. This is assigned as error. The defendant's brief urges that the law requires evidence independent of a confession to connect an accused with the crime charged, and that in this case there was not such evidence. The contention is correct on the facts, but it misapprehends the law. We made clear in Forte v. United States, 1937, 68 App.D.C. 111, 94 F.2d 236, 127 A.L.R. 1120, that in a case involving a confession there must be corroboration in that the *corpus delicti* must be proved by substantial evidence independent of the confession, but that if it is so proved and this evidence of the *corpus delicti* and the confession together are convincing beyond reasonable doubt of the commission of the crime and of the accused's connection with it, this is sufficient for conviction. We did not hold that the connection of the accused with the crime must be shown by evidence outside the confession. We said, after holding that there must be corroboration of the *corpus delicti* independent of the confession, that the *corpus delicti* does not include as a third element the agency of the accused as a criminal, but only the two elements of the body or fact of the wrong and the criminal means (not identity) by which it came about. In the instant case there was substantial evidence—the testimony of Edwards and Sullivan—independent of the confession to prove the *corpus delicti, i. e.,* that the money was taken and that it was taken by force and violence from the person or immediate actual possession of one other than the taker. This being true, the connection of the defendant with the taking could competently be shown by his confession alone. Hence the contention upon which the requested instruction was based fails. The assertion of error in the refusal of the requested instruction fails for the further reason that the proposed instruction as phrased was not a sufficient statement of the law. To make it sufficient the trial judge would have been obliged to add an explanation of both what it did and did not mean, *i. e.,* that it did mean substantial proof of the *corpus delicti* independent of the confession, but that it did not mean, such proof being furnished, corroboration independent of the confession of the accused's connection with the crime. Except upon essential principles of law concerning which it is the duty of the trial judge to instruct the jury whether requested or not, there is no duty to instruct in the absence of a request. Kinard v. United States, 1938, 68 App.D.C. 250, 96 F.2d 522. And the request must be proper. Steers v. United States, 6 Cir., 1911, 192 F. 1, 10; Stassi v. United States, 8 Cir., 1931, 50 F.2d 526. It is not the duty of a trial judge to recast or modify an erroneous or misleading requested instruction. Jackson v. United States, 1919, 48 App.D.C. 272, 275; Watlington v. United States, 8 Cir., 1916, 233 F. 247, 249, certiorari denied, 1916, 242 U.S. 645, 37 S.Ct. 214, 61 L.Ed. 543; Kreiner v. United States, 2 Cir., 1926, 11 F.2d 722, 725, certiorari denied, 1926, 271 U.S. 688, 46 S.Ct. 639, 70 L.Ed. 1152.

▆▆▆ 3. At the close of the Government's case the defendant moved for a directed verdict upon the ground that there was a failure of proof that the robbery charged occurred in the District of Columbia. The motion was overruled. Error is assigned and argued upon this action of the trial judge. The point is without merit. It is true that there was no testimony which in express terms placed the robbery in the District; that is, neither Edwards nor Sullivan, in describing the occurrence of the robbery "at the Federal Gas Station, located at 7th and Maine Avenue, Southwest," stated that this was in the District —and of course if it was not, this was fatal because the court would then lack jurisdiction to try the offense. But venue may be proved by circumstances and inferences and the commonly accepted meaning of words as well as by precise description. Read v. United States, 1924, 55 App.D.C. 43, 299 F. 918, certiorari denied 1925, 267 U.S. 596, 45 S.Ct. 352, 69 L.Ed. 805; Wallace v. United States, 7 Cir., 1917, 243 F. 300, certiorari denied 1917, 245 U.S. 650, 38 S.Ct. 11, 62 L.Ed. 531; Piper v. State,

1930, 202 Wis. 58, 231 N.W. 162; Underhill's Criminal Evidence (4th Ed.1935) § 96. As was said in Piper v. State:

"While direct proof of venue should be made, absence of it does not defeat conviction, where inference of it may properly be drawn from circumstantial evidence. Where no witness testifies directly to the venue, it is sufficiently proved if there is reference in the evidence to the locality known or probably familiar to the jury where the act constituting the offense was committed from which the jury may reasonably have concluded that the place was in the county alleged. Kellar v. State, 174 Wis. 67, 69, 182 N.W. 321; 16 Corp.Jur. p. 769. The defendant's shop, where the transaction involved occurred, was located on Fon du Lac avenue at least probably known to the jurors as a street in Milwaukee. A city policeman testified that it was on his beat. The jury were warranted in concluding from this that the offense was committed in Milwaukee county. [202 Wis. at 61, 231 N.W. at 164]"

■ In the instant case that the robbery took place at a "Federal Gas Station, located at 7th and Maine Avenue, Southwest" was proved by the testimony of Edwards and Sullivan without contradiction. From the term "7th and Maine Avenue, Southwest" in the testimony of these two witnesses and from the testimony of Sullivan that he was a member of the "Metropolitan Police Force," the jury, drawn from the District of Columbia, could reasonably infer that the Federal Gas Station was in the District. The circumstance testified to by Thompson, that he arrested the defendant "at the Pennyland Arcade on 9th Street," and the additional circumstance that the defendant's confession was on its face taken at the "Office of The Robbery Squad, Metropolitan Police Department, Washington, D. C.," would not taken alone identify the Federal Gas Station as in the District of Columbia, but, when considered in connection with the testimony of Edwards and Sullivan, these circumstances aid in giving a District of Columbia setting to all of the transactions involved in the case. Especially in the absence of any evidence to the effect that the offense charged was committed outside the District of Columbia, we think it would not be justified to say that the jury could not infer that the robbery occurred therein.

Other errors are assigned but they are not argued in the brief, and they are without merit.

Affirmed.