Calvin C. SIMMS, Appellant,

v.

**UNITED STATES of America,** Appellee.

Edward JAMES, Appellant,

v.

**UNITED STATES of America,** Appellee.

Jannie DUNCAN, Appellant,

v.

**UNITED STATES of America,** Appellee.

Nos. 13658–13660.

United States Court of Appeals District of Columbia Circuit.

Argued June 24, 1957.

Decided July 8, 1957.

Writ of Certiorari Denied Nov. 12, 1957. See 78 S.Ct. 127.

Messrs. James J. Laughlin and Albert J. Ahern, Jr., Washington, D. C., for appellants.

Mr. E. Tillman Stirling, Asst. U. S. Atty., with whom Mr. Oliver Gasch, U. S. Atty., and Messrs. Lewis Carroll and Frederick G. Smithson, Asst. U. S. Attys., were on the brief, for appellee.

Before PRETTYMAN, WASHINGTON and BURGER, Circuit Judges.

PRETTYMAN, Circuit Judge.

Appellants in these three cases were indicted and tried for first-degree murder. They were accused of killing one Orell Duncan. Appellant Jannie Duncan was his wife. She and appellant James were convicted of murder in the second degree and appellant Simms of manslaughter. They appealed separately but consolidated their cases for briefing and argument. They make seven contentions.

The most important point made by appellants is that jurisdiction of the trial court was not proved; that it was not proved by the prosecutor that the killing took place in the District of Columbia. The proof was that these three persons gave Orell Duncan a merciless beating at an address in the District, placed him, alive, in a car, and later buried his body near Richmond, Virginia. All these events were observed by eyewitnesses. Indeed several people tried to stop the beating. In Richmond another person, a friend of a friend, loaned them the shovels for the burial. The problem presented is whether Duncan died as the result of the beating given him in Washington, or whether he was given another and fatal beating in Maryland or Virginia, or whether, as appellants claim, he fell out of the car in Virginia and was thus killed.

■■■ There is little room for dispute on the law, which is that the District of Columbia court has jurisdiction if a fatal blow is struck in the District of Columbia but death ensues outside the District.[1] The trial court put this question to the jury carefully and correctly. The judge said:

"Before you can convict the defendants under the indictment which I have just read to you, you must find beyond a reasonable doubt that the offense charged occurred in the District of Columbia. You are instructed that the offense is committed within the District of Columbia when the fatal blow or blows were struck here, notwithstanding the consequent death happened without the District of Columbia and in one of the states. You will recall that it is the Government's contention that the blows causing the deceased's death were struck in the District of Columbia. The defendants claim that the injuries causing death were inflicted in the State of Virginia. It is for you to decide on all the evidence, direct and circumstantial. Venue may be proved by circumstances.

"To elaborate slightly on that, while it is not necessary in order to sustain the charge of murder that the deceased died in the District of Columbia, it is essential that the Government establish beyond a reasonable doubt that the fatal blow was struck within the District of Columbia. In this connection if you believe from all the evidence that the defendants did strike the fatal blow but said blow was struck in the automobile owned by said defendant Duncan either in the State of Maryland or in the State of Virginia and that death followed thereafter, you must find the defendants not guilty and if you have a reasonable doubt about this you must give the benefit of that doubt to the defendants and find them not guilty."

Appellants say there is a presumption that death occurred where a body is found. But the dispute in this case is not where death occurred but where the fatal blow was struck. Moreover such a presumption, if there is one, gives way to proof, and in the case before us evidence pro and con as to the place of the fatal blow was put to the jury. The jury decided the matter, and we find no error in the way it was handled.

1. United States v. Guiteau, 1 Mackey 498, 10 F. 161 (1882); George v. United States, 75 U.S.App.D.C. 197, 125 F.2d 559 (D.C.Cir., 1942); White v. United States, 83 U.S.App.D.C. 174, 167 F.2d 747 (D.C.Cir., 1948); 1 Underhill, Criminal Evidence 156 (5th Ed., 1956).

■ Appellants' next point concerns a *subpoena* they issued for the production of Internal Revenue records, which *subpoena* was quashed by the trial court. Witnesses testified appellant Jannie Duncan uttered threats against her husband for turning her in to the Bureau of Internal Revenue. She herself testified that she spoke to him on the subject. The *subpoena* was to show that the investigation of Jannie Duncan's affairs by the Bureau of Internal Revenue began before the couple were married, and also to show that decedent did not make the initial complaint. The trial court correctly quashed the *subpoena*. In the first place, and dispositively, neither the date when the investigation began nor the fact, if it was a fact, that Orell Duncan was the informant was material to the issue here, which was whether Jannie Duncan made threats. The relevance of the records is far too removed from the dispute before us to invoke the rigidly limited power of the courts to order production of executive internal reports. Moreover the records were sought only for the purpose of negating motive. But lack of motive is largely immaterial in a case like this, where eyewitnesses established, and indeed it is conceded, that the accused brutally beat a person and he died, and where no defense is urged, such as alibi or self-defense, which could make lack of motive significant.

Appellants find fault with the court's instructions in a number of respects. They urge that the court erred in refusing certain instructions. We think it did not err. The trial judge repeatedly told the jury they must find beyond a reasonable doubt that these defendants struck the fatal blow. Thus the court sufficiently put to the jury the problems raised by appellants' requests for instructions about Duncan's jumping from the car and about a prior injury. And there were sufficient inherent defects in appellants' accounts to warrant disbelief. We find no error in the court's instructions.

■ Appellants say the trial court erred when it quashed a *subpoena* issued by the defense to the Director of the Federal Bureau of Investigation. As described to us in appellants' brief, the *subpoena* was "to bring the complete files reflecting the criminal records of the witnesses Winchester, Jones, Gloria Beasley, etc." Appellants say, "In particular with respect to the witness Winchester, one of appellants' counsel, Mr. Laughlin, stated to the court that information had come to him that the main witness Winchester was a dope addict and we had reason to believe this would be reflected in the FBI records." The Government had already furnished to the defense the records of the Metropolitan Police Department concerning the defendants. In the trial court defense counsel told the court:

"It may well be there will be nothing added to what we already have. It may well be that this is adequate and complete.

"Personally, I do not think it is."

The prosecutor told the court that, although an agent of the F.B.I. was present in court pursuant to the *subpoena*, the prosecutor had not seen the records. Thus it is plain that the prosecutor had not used these records for any purpose. The purpose of the *subpoena* was to supply the defense with material which might be used to impeach the credibility of Government witnesses, in so far as those records might reflect convictions of these witnesses for crime.

In addition to arguing that these F.B.I. records are not available under the circumstances here, the Government also points out that the records of the F.B.I. can be identified only by fingerprints, not by name only, and that none of the witnesses named had been fingerprinted.

Appellants cite the recent opinion of the Supreme Court in Jencks v. United States.[2] But that case does not resemble the present one. There a witness had testified to certain facts; the

2. 1957, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103.

prosecution was alleged to have in its possession a report made by the same witness to the F.B.I. concerning the same facts, the report being made contemporaneously with the occurrence of the facts, and this report was alleged to be inconsistent with the testimony of the witness on the stand. The Court did not intimate approval of unlimited examination into F.B.I. files in the hope that something might turn up of benefit to the accused. As a matter of fact the Court made amply clear the continued prohibition upon judicial invasion of executive internal memoranda and reports. The Court cited and italicized its holding in the Gordon case[3] that the demand there approved was for the production of "specific documents and did not propose any broad or blind fishing expedition among documents possessed by the Government". And in any event the method for proving criminal records is by court documents and entries[4] and not by F.B.I. reports. And, again, only the records of convictions, not records of arrests or other features of alleged "criminal records", could be used for impeachment purposes. We are of opinion that the court correctly quashed the *subpoena* for "the complete files reflecting the criminal records of the witnesses" named on the indictment. Moreover, since the defense had the Metropolitan Police records concerning these witnesses, who were local people, and since the reputations and activities of the witnesses were in fact amply displayed to the jury, it cannot fairly be said that failure to supply the additional F.B.I. information actually prejudiced the defendants—who were, after all, the ones on trial.

■■ Appellants sought to prove by a hospital record that, when appellant Jannie Duncan was at a hospital at a time long prior to the date of the beating of Orell Duncan, she told a nurse or a doctor that her husband had pushed her through a window. Appellants claim error in the trial court's exclusion of the record. To state the proposition is to demonstrate the lack of error. Whether or not her husband pushed her through a window in October is totally immaterial to the issue of his death resultant to a beating at her hands the following March. And the hospital record is not evidence of conversations; it is evidence of medical data entered in such records in the regular course of hospital business.

Appellants complain of the argument of the prosecutor to the jury. We find nothing wrong with it.

■ Appellants say the trial court erred when it excluded testimony by appellant James to the effect that a police officer tried to persuade him to testify falsely. At the time of trial the policeman was ill of a heart attack. Here again is a self-refuting proposition. Whether the police officer did or did not try to persuade one of the accused to testify falsely is totally immaterial to the question whether these three defendants beat Orell Duncan to death.

■ We repeat, in conclusion, that this is not a case sought to be proved by circumstantial evidence of the fact of the crime or the identity of the assailants. Witnesses, a number of them, saw the beating, and the man who loaned appellants the shovels for the burial and a passerby who witnessed the burial testified. The only real debate was whether death as the final climax ensued technically from the beating given the victim in the District of Columbia or from another beating given him elsewhere; or whether the jury would believe the story of the appellants that the victim fell out of the car and so died. We need not describe the evidence which supplies reasonable ground for jury rejection of the latter account.

Affirmed.

3. Gordon v. United States, 344 U.S. 414, 419, 73 S.Ct. 369, 97 L.Ed. 447 (1953).

4. 31 Stat. 1357 (1901), as amended, D.C. Code, § 14-305 (1951).