**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Steven M. CHARPENTIER, Defendant-Appellant.**

**No. 340–70.**

United States Court of Appeals, Tenth Circuit.

Feb. 24, 1971.

Rehearing Denied April 13, 1971.

Robert J. Roth, U. S. Atty. (Stephen K. Lester, Asst. U. S. Atty., on the brief), for plaintiff-appellee.

Ferd E. Evans, Jr., Wichita, Kan., for defendant-appellant.

Before HILL and HOLLOWAY, Circuit Judges, and DOYLE, District Judge.

WILLIAM E. DOYLE, District Judge.

Defendant seeks reversal of a judgment of conviction by a jury on the charge of interstate transportation of a stolen motor vehicle in violation of 18 U.S.C. § 2312.

The questions which we are asked to determine are *first*, whether certain admissions and confessions of the defendant were valid and admissible. *Secondly*, whether the corroborating evidence apart from the defendant's admissions and confessions as to the commission of an offense was substantial and sufficient in law.

The facts are simple. On December 20, 1969, Helen Hensley, the owner of the vehicle in question, parked the 1968 Ford automobile in front of her apartment in Dallas, Texas. The next morning at ten o'clock she went out to drive the car and then discovered that it was missing. Mrs. Hensley reported the fact to the Dallas Police Department, and the information was relayed to the National Crime Information Center. That very evening Mrs. Hensley's automobile turned up at a Salvation Army parking lot in Wichita, Kansas. An officer noticed the out-of-state license and the fact that the trunk had been pried open and was held together by a wire. A subsequent check revealed that the license was that of a 1968 Ford which had been reported stolen in Texas.

After the officer, Gary Ralston, found that the automobile was apparently stolen, he contacted a detective, one Barry Costello. Upon the arrival of the latter, he instructed Ralston to remain with the car while he, Costello, checked out the buildings in the area to determine who had been driving it. As Costello passed the nearby Salvation Army building he saw the defendant inside talking to two men. Upon entering the building he heard the defendant tell the men that he had sold a tape recorder in Oklahoma so that he could buy gasoline. At that point Costello started to converse with Charpentier and asked if he had just gotten into town and was told that he had. He said that he had arrived from Dallas by car. Costello then asked if the car in which he came was the Ford out in the parking lot, and the defendant replied that it was. Thereafter, the defendant was placed under arrest and advised of his constitutional rights. The defendant volunteered that another man was with him, one Griffin, and that he was upstairs eating dinner. Ralston was then called to the building and the officers escorted defendant to the third floor where the latter pointed out Griffin, who was also placed under arrest. At that point Costello gave the Miranda warning to both men.

Defendant and Griffin were taken into custody, and after that they went to the parking lot and entered officer Ralston's patrol car. Defendant stated that he and Griffin had been living and working together in Dallas for approximately three weeks; that they were together when the car was stolen; and that they had taken turns driving it from Dallas to Wichita.

The following morning defendant was interviewed at the Wichita City Prison Farm by Special Agent James F. Miller of the F.B.I. Defendant executed a form written waiver of his rights. He then made a confession to the effect that he and Griffin had seen a 1968 Ford early in the morning of December 21, 1969, and that they found that it was unlocked and that on the spur of the moment they stole it and drove it to Wichita. There was no admission by the defendant as to who had hot-wired the car, but the defendant did admit to having pried open the trunk in order to remove the spare tire. On arrival in

Wichita, they went to the Salvation Army looking for a room and at this time were arrested.

There was a pretrial hearing on a motion to suppress the confession. At that time the defendant stated that he was not advised of his rights prior to his interview with Special Agent Miller. He also said that his confession was motivated by a desire to be transferred to the county jail and in order to get out of the City Prison Farm. The officers, of course, testified to the contrary and the trial court denied the motion to suppress. Both the admissions prior and subsequent to arrest were received and also the written confession. The defendant did not testify at the trial of the case.

The main thrust of the defendant's argument is that the original interview by detective Costello, who ascertained whether he had driven the automobile from Texas, was obtained without warning in violation of his rights and that all subsequent admissions and confessions were contaminated by this allegedly illegal interrogation.

Defendant was undoubtedly a possible suspect at the time of the preliminary inquiry. However, this was general and not specific questioning. The officer was more interested in ascertaining whether the defendant was connected with the vehicle which had been obviously stolen than he was in obtaining incriminating evidence from the defendant.

As we view it, it would be unreasonable and impractical to refuse to allow an officer to make an investigation designed to either dissipate suspicion and possibly to release the accused or, on the other hand, to implicate him. If it had turned out that the defendant was innocent, a few questions would have sufficed. It is also important that at this point the defendant was not under arrest; he was in the lobby of a public building, and consequently there was no need to give a Miranda warning.

The decision of the Supreme Court in Escobedo v. Illinois, 378 U.S. 478, 84 S. Ct. 1758, 12 L.Ed.2d 977, recognized the distinction between a general and special inquiry. That case noted that where the investigation is no longer a general inquiry into an unsolved crime, but has begun to focus on a particular subject, the suspect has been taken into police custody and the police have commenced to listen to incriminating statements, then if he had not been warned he has been denied his rights. However, the Court added:

> Nothing we have said today affects the powers of the police to investigate "an unsolved crime," * * * by gathering information from witnesses and by other "proper investigative efforts." Haynes v. Washington, 373 U. S. 503, 519, 83 S.Ct. 1336, 1346 [10 L.Ed.2d 513]. We hold only that when the process shifts from investigatory to accusatory—when its focus is on the accused and its purpose is to elicit a confession—our adversary system begins to operate, and, under the circumstances here, the accused must be permitted to consult with his lawyer. Escobedo v. State of Illinois, *supra* at 492, 84 S.Ct. at 1766.

It has long been recognized that the police may, under some circumstances, even *detain* temporarily for the purpose of preliminary inquiry. The detention and questioning must, of course, be reasonable, but where, as in the instant case, there is questioning without detention the case is less difficult. The cases hold that Miranda warnings are not necessary in such circumstances.[1]

---

1. United States v. Gibson, 392 F.2d 373 (4th Cir. 1968), wherein the Court noted that custodial interrogation was defined by the Supreme Court as:

 * * * questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. (Citing Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)).

 Here the defendant was confronted by officers in a tavern and asked to step outside. A brief conversation ensued and

In the case at bar the process had not shifted from investigatory to accusatory, and there were no circumstances from which it is possible to infer that the atmosphere was one of compulsion or antagonism.

Having concluded then that the initial inquiry was valid, we need not consider the related question whether subsequent statements were tainted by the allegedly illegal initial admission.

 Defendant also argues that the evidence herein is as a matter of law insufficient because the basic facts, apart from the extra-judicial statements of the defendant, were not sufficient to furnish the required quantum of corroboration. He would have us hold that all essential elements of the offense, including participation of the accused, must be established by independent evidence beyond a reasonable doubt as a prerequisite to reception of extra-judicial statements. It is true that the accused cannot be convicted of a crime based upon his own uncorroborated confession or admission and that some measure of independent evidence is essential. This requirement, however, is fulfilled if there is substantial evidence sufficient to establish that the confession or statement is trustworthy. The independent evidence need only show sufficient corroborating facts so that taken with the confession guilt is established beyond a reasonable doubt.

The principle in question has been applied in Yarbrough v. United States, 309 F.2d 936 (10th Cir. 1962), in Kelly v. United States, 246 F.2d 864 (10th Cir. 1957), and in Braswell v. United States, 224 F.2d 706 (10th Cir. 1955), cert. denied, 350 U.S. 845, 76 S.Ct. 86, 100 L.Ed. 752 (1955).

In Yarbrough this Court said:

The law is well settled that a criminal conviction cannot be sustained when the offense is proven solely by the uncorroborated extra-judicial confession or admissions of the accused. It is necessary that such extra-judicial statements establishing essential elements of the crime charged be corroborated by evidence independent of the confession or admissions. The prosecution, in addition to the confession or admissions, must produce substantial independent evidence of the essential elements of the crime charged which will tend to establish the trustworthiness of the statements made by the accused.

It was there held that the corroborating evidence was inadequate. The defendant there had been convicted of a crime punishable by imprisonment for more than one year and was arrested on the highway in possession of firearms and ammunition. He was convicted of the crime of transportation of firearms in interstate commerce by a convicted felon. It was held that the driving of a vehicle bearing an Oregon license plate in the possession of the firearms and ammunition, together with a postcard from Utah, did not constitute substantial independent evidence of the essential elements of the crime charged which would tend to establish the trustworthiness of the statements made by the accused.

 The case at bar is quite different. Here a vehicle recently stolen in Dallas, Texas, was found in a parking lot at Wichita, Kansas. The trunk was pried open and wires crossed. Thus, the *corpus delicti* of the offense was established quite apart from the confession in

this became the subject of a motion to suppress. It was concluded that the defendant had not been "in custody or significantly restrained, or in any other way deprived of his free will." 392 F.2d at 376. The Court further commented that the evils with which Miranda was concerned were not present there, that is, an unfamiliar atmosphere, in which the defendant is surrounded by antagonistic

forces, and in which there is a "potentiality of compulsion" inherent in the in-custody interrogation.

*See also*, Mares v. United States, 383 F.2d 811 (10th Cir. 1967). It was there noted that Miranda warnings were unnecessary where the defendant " * * * was not under arrest and was free to continue the interviews or leave as he saw fit." *Id.* at 813.

that it appeared from the basic facts that 1) the automobile had been stolen in Texas; 2) it had been driven across state lines; and 3) the circumstances apparent to the officer supported the inference that whoever drove it did so with the knowledge of its stolen character. Identification of the accused as the person who committed the crime is not, of course, a part of the *corpus delicti*.[2]

In the case before us there was substantial independent evidence sufficient to establish the trustworthiness of the confession and sufficient also to independently establish the necessary elements of the offense.

The judgment of the district court is affirmed.

2. Caster v. United States, 319 F.2d 850, 852 (5th Cir. 1963); Vogt v. United States, 156 F.2d 308, 310 (5th Cir. 1946); George v. United States, 75 U.S.App.D.C. 197, 125 F.2d 559, 563 (1942); Murray v. United States, 53 App.D.C. 119, 288 F. 1008, 1016 (1923); United States v. Washington, 69 F.Supp. 143, 146 (D.Md.1946). Two of these cases, *Caster* and *Washington*, involved interstate transportation of a stolen motor vehicle. In *Washington, supra*, the court said:

The precise meaning of the phrase "corpus delicti" in this context has been the subject of some uncertainty and apparent misunderstanding in some judicial decisions heretofore, but at the present time it is well established, at least by the weight of federal decisions, that here the phrase corpus delicti means that the extrinsic evidence must establish the commission of the crime by *somebody*, or in other words, that the crime has in fact been committed. It does not mean, as some few decisions have apparently held, that the required corroborative or extrinsic evidence must also show or tend to show that the defendant committed the crime.

*See also*, Manning v. United States, 215 F.2d 945, 952 (10th Cir. 1954) ("It is enough for this purpose if the evidence of the *'corpus delicti'* is such as fairly and reasonably to warrant a finding that the car was stolen and that it was transported in interstate commerce by someone who knew it was stolen.")