UNITED STATES of America,
Appellee,

v.

Dale Glennon WILSON, Appellant.

No. 75–1299.

United States Court of Appeals,
Tenth Circuit.

Jan. 19, 1976.

E. Edward Johnson, U. S. Atty., and Bruce E. Miller, Asst. U. S. Atty., on the brief, for appellee.

Leonard D. Munker, Federal Public Defender, and David J. Phillips, Asst. Federal Public Defender, on the brief, for appellant.

Before HILL, SETH and McWIL-LIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

Dale Glennon Wilson was convicted by a jury of conveying from place to place within the United States Penitentiary at Leavenworth, Kansas, a dangerous weapon designed to kill, injure, or disable in violation of 18 U.S.C. § 1792. At trial the weapon in question was described as "a table knife, regular kitchen table knife, that they had sharpened down and put tape around the handle." This particular knife has now formed the basis for two prosecutions, based on sepa-

rate conveyances, with the jury in each instance convicting.

Several inmates at the United States Penitentiary at Leavenworth, Kansas were drinking home brew at the prison exercise yard. One of these inmates, one Wayne Davis Martin, became intoxicated and he was taken by prison guards from the exercise yard to the prison control unit. As Martin's clothes were being removed, a knife fell from his person to the floor.

Martin was charged with conveying the knife from place to place within the penitentiary in violation of 18 U.S.C. § 1792. The "conveyance" relied on was from the exercise yard to the control unit. Martin's first trial ended in a hung jury, but his second trial resulted in a guilty verdict. At each of these trials Wilson, the present defendant, testified in behalf of Martin. The gist of Wilson's testimony at each of Martin's trials was that the knife in question was his and that he had conveyed the knife from the prison's west storehouse to the exercise yard, where he had surreptitiously planted the knife on Martin's person when the latter became inebriated during the drinking spree at the exercise yard. It was Wilson's further testimony that Martin was too drunk to realize that Wilson had placed the knife on his person.

As an outgrowth of his own testimony at the two Martin trials, Wilson was himself charged with conveying that same knife from place to place within the penitentiary in violation of 18 U.S.C. § 1792. The "conveyance" relied on by the Government in its prosecution of Wilson was from the prison's west storehouse to the exercise yard. Wilson's testimony at the Martin trials was introduced into evidence at his own trial through the testimony of an FBI agent who was present at the Martin trials and who had thus heard Wilson's earlier testimony. The agent identified a transcript of Wilson's earlier testimony and such was then read into the record in the presence of the jury. In this manner it was established, at least *prima facie,*

that Wilson and Martin were both assigned to work in the west storeroom and that both of them, along with others, started drinking home brew shortly after reporting for work on the day in question. At about noon the drinking party moved to the exercise yard. Wilson testified at Martin's trials that he (Wilson) had the knife in question hidden in the west storeroom and that as the group moved to the exercise yard he obtained the knife and carried it on his person to the exercise yard, a distance of some 50 yards. According to Wilson, Martin became intoxicated and "was in a way passed out, because I had to pick him up and put him on a table, and I put the knife in his shirt pocket."

Another Government witness at Wilson's trial testified that both Martin and Wilson were in fact assigned to work in the west storeroom, and that prison records indicated that neither was absent from work on the day in question. The final Government witness testified as to finding the knife on Martin's person as the latter was being undressed in the control unit.

Wilson did not testify at his own trial. However, Martin did testify and he stated that it was someone other than Wilson who had given him the knife. Another inmate, one Gary Williams, testified that it was he who had in fact given the knife to Martin. It was on this general state of the record that the jury convicted Wilson.

█ On appeal the only matter raised is the contention that there is no corroboration of Wilson's infra-judicial confession made during the course of his testimony in the earlier Martin trials. There is no suggestion that Wilson's earlier testimony in the Martin trials was involuntarily given or that he was not fully advised of his Constitutional rights. In each of Martin's two trials Wilson was represented by his own counsel and the trial court in each instance fully advised Wilson of his panoply of rights. So, the only issue before us is whether the infra-judicial confession of Wilson finds corroboration in the record. We conclude

that there is such corroborating evidence.

 The general rule is that an uncorroborated extra-judicial confession standing alone is insufficient to sustain a conviction in a criminal proceeding. There must be some substantial independent evidence tending to establish the trustworthiness of the confession. It is not necessary, however, that the corroborative evidence be sufficient, independent of the confession, to establish the *corpus delicti*. Nor is it necessary that there be independent corroborative evidence that it is the accused who perpetrated the crime. His confession alone may establish that particular fact. *United States v. Henderson,* 467 F.2d 904 (10th Cir. 1972); *United States v. Charpentier,* 438 F.2d 721 (10th Cir. 1971); *Yarbrough v. United States,* 309 F.2d 936 (10th Cir. 1962); *Kelly v. United States,* 246 F.2d 864 (10th Cir. 1957); and *Braswell v. United States,* 224 F.2d 706 (10th Cir. 1955).

 Before identifying the independent corroborative evidence in the instant case, let us look briefly again at Wilson's "confession" as given in his testimony under oath in each of Martin's two trials. In his earlier testimony Wilson "confessed" that the knife in question belonged to him and that he had owned it for some two months. According to Wilson, he had hidden the knife on the premises of the prison's west storehouse. Wilson and Martin, along with others, began a drinking party in the west storehouse on the morning in question and the party later moved to the exercise yard. As indicated, Wilson testified under oath, at two separate trials, that he took the knife from its hiding place in the storehouse and that it was he who had conveyed it to the exercise yard. There, according to Wilson's own admission, he planted the knife on Martin when the latter was so drunk that he didn't really know what was going on. In thus testifying at Martin's earlier trials, Wilson in so many words "confessed" that it was he who had conveyed the knife in question from the west storehouse to the exercise yard. What evidence is there that tends to corroborate such confession?

By independent testimony it was established that both Wilson and Martin were indeed assigned to work at the prison's west storehouse, which corroborated Wilson's testimony to that effect. Other independent testimony established that the knife was taken from Martin's person when the latter was undressed in the prison's control unit. This tends to corroborate Wilson's testimony that he had placed the knife on Martin's person. At Wilson's trial it was also established by evidence independent of Wilson's confession that someone other than Martin had brought the knife to the exercise yard. In other words it was definitely established through independent testimony that Martin did not himself bring the knife to the exercise yard, and that someone else had. And whoever this someone else was, he had thus violated the provisions of 18 U.S.C. § 1792.

In sum, the independent evidence in the instant case is such as to clearly show that someone other than Martin conveyed the knife from the prison's west storehouse to the exercise yard. Thus the entire *corpus delicti* was established independent of the confession. All the confession did in the instant case was to identify the defendant as the perpetrator of the crime charged. Identification of the accused as the perpetrator of the crime has never been deemed a part of the *corpus delicti*. *United States v. Charpentier,* 438 F.2d 721 (10th Cir. 1971). Hence, all things considered, we find ample corroborating evidence to support Wilson's confession twice made under oath in court that it was he who conveyed the knife from the prison storehouse to the exercise yard. Indeed, the fact that Wilson twice testified under oath that he conveyed the knife from the storeroom to the yard is in itself a form of corroboration.

There is some suggestion that since the jury convicted Martin, that jury necessarily rejected Wilson's testimony.

The jury no doubt did reject Wilson's testimony as to Martin's degree of intoxication, but it does not follow that the jury rejected Wilson's testimony that he had conveyed the knife to the exercise yard. The jury really had no occasion to consider that particular matter, since the "conveyance" relied on in Martin's trial was from the exercise yard to the control unit. And the further suggestion that Gary Williams could now be prosecuted on the basis of his testimony in the Wilson trial is no doubt forestalled by the fact that notwithstanding Williams' testimony that it was he who brought the knife to the exercise yard, the jury has now determined that it was Wilson who in fact brought the knife.

The Government has an alternative contention that where an infra-judicial confession is involved, as contrasted to an extra-judicial confession, there is no need for *any* independent corroborating evidence, citing *Manning v. United States*, 215 F.2d 945 (10th Cir. 1954). We need not here decide that matter, for, as indicated, in the instant case there is independent corroborating evidence.

Judgment affirmed.