**Eldred Clifton MANNING, Appellant,**

**v.**

**UNITED STATES of America, Appellee.**

**No. 4866.**

United States Court of Appeals,
Tenth Circuit.

Sept. 9, 1954.

Robert W. Domme and Michael A. Barbara, Topeka, Kan., for appellant.

William C. Farmer, Wichita, for appellee.

Before PHILLIPS and HUXMAN, Circuit Judges, and RITTER, District Judge.

RITTER, District Judge.

The appellant was convicted and sentenced to a term in the penitentiary in the District Court of the United States for the District of Kansas. This appeal is taken from the judgment of that Court. The indictment was laid under the National Motor Vehicle Theft Act, 41 Stat. 324, 18 U.S.C.A. § 408,[1] commonly known as the "Dyer Act", and charged appellant with transporting a motor vehicle in interstate commerce from Ranger, Texas, to Garden City, Kansas, knowing it to have been stolen.

The appellant contends that it was error to convict him upon a confession un-corroborated by proof of the *"corpus delicti"*. He makes the broad claim that to prove the *"corpus delicti"* the evidence must establish every essential element of the offense charged.

In all but a few American jurisdictions the courts have adopted a Rule of Law that the uncorroborated confession of the accused in a criminal case is not alone sufficient to support a conviction. In most jurisdictions, moreover, the corroborating evidence must establish the *"corpus delicti"*. 7 Wigmore on Evidence (3d ed. 1940) Secs. 2070 and 2071, pages 393 to 400. The majority American view is probably due to Professor Greenleaf's suggestion in his work on evidence, Sec. 217, and to the great authority given his work by the American courts of his time.

Wigmore tells us that "the phrase 'corpus delicti' has been the subject of much loose judicial comment, and an apparent sanction has often been given to an unjustifiably broad meaning". 7 Wigmore on Evidence (3d ed. 1940) Sec. 2072, page 401.

The use of Latin words, e.g. *"corpus delicti"*, *"res gestae"* and the like, in the law of evidence, do not tend to throw much light upon the subject. Not infrequently one feels justified in suspecting that when a judge says evidence is admissible because it is part of the *"res gestae"*, or says a confession is not admissible because the *"corpus delicti"* has not been proved, the judge has a hunch it should be admissible or inadmissible, as the case may be, and resorts to a foreign language he doesn't understand for a reason.

The term *"corpus delicti"* is not synonymous with the whole of the charge. If the government must prove the whole charge, in order to corroborate the confession, of what use is the confession? As Wigmore says, 7 Wigmore on Evidence (3d ed. 1940) Supplement 1953, Sec. 2072, page 402, this "would be absurd". And, of course, it is not the law.

1. Now 18 U.S.C.A. §§ 2311-2313.

If the term *"corpus delicti"* does not signify the whole of the charge, what then is the meaning of the phrase?

Wigmore tells us that analysis of any crime will show three elements: *First,* the fact of an injury or a loss, as, in homicide, a dead person; in arson, a house burned; in larceny, property missing. *Secondly,* the fact of somebody's criminality (in contrast, e.g. to accident) as the cause of the injury or loss. The proof of these two elements involves the proof of the commission of a crime by somebody. *Thirdly,* the fact of the connection of the *accused* with the crime—his identity as the criminal, or the guilty agent through whom the wrong has occurred. 7 Wigmore on Evidence (3d ed. 1940) Sec. 2072, page 401.

Most American courts take the view that the phrase *"corpus delicti"* includes both the first and second elements, but does not include the third. In this view of the matter the rule requires corroboration of the confession by proof of (1) the fact of an injury or loss, and of (2) the fact of *somebody's* criminality as the cause of the loss or injury.

The rule, adopted by almost all of the courts, does not require proof, independent of his confession, of the connection of the accused with the crime, his identity as the criminal or the guilty agent through whom the wrong has occurred. The authorities are collected in 7 Wigmore on Evidence (3d ed., 1940, Supplement 1953) Secs. 2070–2072, pp. 393–403; and a note in 127 A.L.R. 1130, to Forte v. U. S., 1937, 68 App.D.C. 111, 94 F.2d 236, 127 A.L.R. 1120; U. S. v. Washington, D.C.1946, 69 F.Supp. 143.

In the case before us the grand jury charged an offense under 18 U.S.C. § 408 which provides: "Whoever shall transport or cause to be transported in interstate or foreign commerce a motor vehicle, knowing the same to have been stolen, shall be punished by a fine of not more than $5000, or by imprisonment of not more than five years, or both."

█ Analysis of the offense here charged, and of the rule of corroboration laid down by the majority of American courts concerning proof of the *"corpus delicti"* indicates that the evidence must show: *First,* that the motor vehicle was stolen; *secondly,* that it was transported in interstate commerce; *thirdly,* by *someone* who knew it was stolen.

█ The rule, by the great weight of authority, does not require proof, independent of the confession, of the connection of the *accused* with the crime, or of his identity as the criminal. It would seem, therefore, that as a part of the *corpus delicti,* the government need not corroborate his confession by proof that the *defendant* committed the crime and drove the car across a state line "knowing the same to have been stolen".

The interesting question in this case now appears. Is the knowledge of the *defendant* a part of the *"corpus delicti"* in a Dyer Act case? If it is, we are confronted with something of a dilemma, for, whichever way we decide, the decision runs counter to a line of authority recognized as the view of nearly all American courts. You cannot prove the knowledge of the defendant while transporting the car across the state line without also proving his connection with the crime, and his identity as the criminal. Evidence of both, of necessity, is commingled. And by the great weight of authority evidence of his identity as the criminal and his connection with the crime is not a part of the *"corpus delicti"*. On the other hand, also by the great weight of authority, the act causing the wrong or loss must be a criminal act, and under the Dyer Act it is not a criminal act unless the interstate transportation was with knowledge that the car had been stolen. So, it would seem, whichever view we take, we must run counter to the majority view as to the content of the term *"corpus delicti"*.

█ But, this is not necessarily so. The view we reach is consistent with both lines of authority, and, indeed, is supported by them. That view is that the government need not prove as a part of the "corpus delicti" for purposes of corroboration that the *defendant* had

knowledge that the car was stolen. It is enough if the government proves that *someone* who transported it knew it was stolen. And this may be shown by the fair and reasonable inferences to be drawn from all of the facts and circumstances in evidence in the case.

We believe this view is amply supported by the following reasons:

1. To hold otherwise would be to hold that proof of the *"corpus delicti"* must show or tend to show that the defendant committed the crime. If this were true the term *"corpus delicti"* would be synonymous with the charge and the whole of it. The result would be that the government would be required to prove the whole charge, independently of the confession in order to corroborate it. This is contrary to practically all of the authorities, and surely cannot be true.

2. This would be an extension of the rule of law requiring corroboration, and an increase in the content of the concept signified by the term *"corpus delicti"*.

3. The policy of the general rule requiring proof of the *"corpus delicti"* is itself questionable. It never became established generally in the English courts, and Wigmore says that "so far as it can be supposed to obtain at all today in the English and Irish courts, it is apparently restricted to the case of homicide". Vol. 7, 3d ed., p. 394.

4. There is high authority against the general rule. Judge Learned Hand, in Daeche v. United States, 2 Cir., 250 F. 566, 571, expressed his personal agreement with the views expressed by Wigmore and his own as being opposed to a rule of law requiring corroboration of a confession necessary to conviction. The fact that he felt obliged to follow what he referred to as "a very general concordance of judicial opinion in the United States" does not detract from the weight of his personal opinion. That opinion, to say the least, is of as great weight as that of Greenleaf whose views in all probability moved the American courts originally to lay the foundation of the structure of authority by which we all now feel bound. Wigmore, page 396. This view has the support also of the Supreme Judicial Court of Massachusetts, Com. v. Killion, 194 Mass. 153, 80 N.E. 222.

5. Moreover, the problem confronting a trial judge who must instruct a jury of lay folks would be an impossible one, not to mention the consternation of the members of the jury who must apply the rule to a complex mass of evidence. See Wigmore, Sec. 2072, p. 402. How can a trial judge expect the jury to understand a charge that evidence of the *"corpus delicti"* need not show or tend to show that the *defendant* committed the crime, but must show that the *defendant* knew the car he was transporting in interstate commerce was stolen?

6. Such a rule would be capable of abuse and an obstruction to the course of justice. It would provide another verbal formula in which to entrap the trial judge into an error of words in his charge to the jury. See Wigmore, supra.

7. Assume there is a danger of false or coerced confession of guilt which the rule is supposed to guard against; the jury can be warned as well by counsel, or by the judge in his charge on the facts, and his comment upon the evidence, concerning which in the federal system he has broad power.

Counsel did not cite to us the case of Forte v. United States, 1937, 68 App. D.C. 111, 94 F.2d 236, 237, 127 A.L.R. 1120. This is probably the strongest case in support of the contention of the defendant, for there the judgment of the trial court was reversed and the conviction set aside for the reason "that there was lacking, independent of his confession, substantial proof of the *corpus delicti* in that there was no evidence, independent of the confession, that he [defendant] knew that the car was stolen."

In the opinion the court said: "The *corpus delicti* does not properly include, as a third element, the agency of the accused as the criminal. This would make the term synonymous with the

whole of the charge, and such a definition has been repudiated. See 4 Wigmore, Evidence (2d Ed. 1923) § 2072(3), and therein cited Messel v. State, 176 Ind. 214, 95 N.E. 565 (rape under age), and State v. Schyhart, Mo.Sup., 199 S.W. 205 (killing cattle). It would require, in view of the corroboration rule, that the whole of the charge, including the criminal agency of the accused, be evidenced independently of the confession. It is to be noted, however, that in certain types of crimes involving *scienter* on the part of the accused it is not possible to separate, either conceptually or practically—that is in respect of the proof— the *scienter,* as an element of the *corpus delicti,* and the agency of the accused. So in the crime of receiving stolen goods knowing them to be stolen, and in the crime at bar, it is not possible to separate, either conceptually or practically, the element of guilty knowledge in the transportation and the element of agency of the accused as the criminal. But this cannot operate to diminish the duty of the Government to present evidence of both elements of the *corpus delicti* independent of the confession."

Faced with the problem whether or not to extend the rule as to corroboration, the court expressed a view which seems necessarily to have extended it. And this, in the face of the view of practically all American courts that the *"corpus delicti"* does not include, as the third element, the agency of the accused as the criminal.

As Judge Learned Hand said in Daeche v. U. S., supra, "We should not feel at liberty to disregard a principle so commonly accepted, merely because it seems to us that such evils as it corrects could be much more flexibly treated by the judge at trial, and even though we should have the support of the Supreme Court of Massachusetts in an opposite opinion. Com. v. Killion, 194 Mass. 153, 80 N.E. 222, 10 Ann.Cas. 911."

Having a choice, however, whether or not to extend such a principle, our choice we think should be not to extend it.

The Forte case perhaps is distinguishable on its facts for two reasons, the possession of the stolen property there was not recent, and the United States Attorney advised the court that "the Government did not rely on the inference of guilt from possession of stolen property for a conviction in this case".

The question in the case before us, therefore, is whether the government's evidence, aliunde the confession, is sufficient fairly and reasonably to show that the car was (1) stolen in Ranger, Texas; (2) transported across the state line to Garden City, Kansas; (3) by *someone* (not necessarily this defendant) knowing it to have been stolen.

If the independent evidence is sufficient for the purpose of corroborating the confession, then, the ultimate question of the guilt or innocence of this defendant is whether the whole of the evidence (including the confession) establishes his guilt beyond a reasonable doubt of the crime charged in all of its elements.

Independent of the confession, and independent of defendant's own testimony in court at the trial, the record contains the following evidence received without objection:

On and prior to May 8, 1946, Forrest D. Ford, of Ranger, Texas, owned a 1939 Chevrolet, 4-door or 2-door black sedan, bearing motor number 2475902, and Texas license plates number BV 3404.

On the evening of May 8, 1946, Ford's wife drove the car to the Ranger General Hospital at Ranger, Texas, parked the car near the hospital around 7:00 p. m. When she came out of the hospital something after 10:00 p. m. the car was gone. That was the last time Ford or his wife saw it.

Later on Ford was notified that the car had been located in Oregon. A transaction between Ford, the owner, and a second hand car dealer in Eugene, Oregon, resulted in the sale of the car by telephone. The owner, Ford, received payment of $450.00 from such sale.

The latter part of May, 1946, the defendant, Manning, came to Pierceville, Kansas, which is near Garden City, and remained in and about there during the months of June and July. He went by the names of Earl Hall and Earl Davis. He was unequivocally identified in the courtroom as the man who came to Pierceville at that time, and who had in his possession a car answering the general description of the stolen car. He drove a 1939 Chevrolet 4-door, or 2-door sedan, black or blue-black in color. The car carried Texas license plates. Two weeks after defendant came to town he painted the body of the car gray and the wheels red.

Kansas license plates were removed from the car of a farmer acquaintance of defendant by the name of Walker and disappeared from Garden City, Kansas, about the same time as did defendant and the car he had been driving. The Texas license plates were later found on Walker's premises.

If the foregoing were all of the Government's proof, assuredly it would fail to establish the "corpus delicti". Cox v. United States, 8 Cir., 1938, 96 F.2d 41, 42, in which Judge Sanborn said: "Aside from the testimony that the automobile sold to Powell in Missouri on Sunday was of the same model, type, and style as the automobile stolen from French in Kansas on Saturday, that the French automobile was stolen shortly after the appellant agreed with Powell to procure for him such an automobile within a radius of seventy-five miles of Joplin, and that Powell subsequently entered a plea of guilty in the federal court based upon his possession of the automobile sold by the appellant to him, there is no evidence to justify even a suspicion that the automobile stolen from French was the same automobile which was sold to Powell.

"Proof that an automobile of a well-known and widely distributed type and model is stolen in one state on Saturday and that a similar car is sold and delivered in an adjoining state on the following day is not sufficient evidence upon which to base a finding that the automobile stolen was the automobile sold, or a finding that the automobile sold was an automobile which had moved in interstate commerce and was still a part of interstate commerce. This is because the evidence, taking that view of it most favorable to the government, is not inconsistent with the hypothesis that the automobile sold was a different automobile than that which was stolen. Evidence which is consistent with two conflicting hypotheses tends to prove neither, Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 74 L.Ed. 720; Stevens v. The White City, 285 U.S. 195, 204, 52 S. Ct. 347, 76 L.Ed. 699; Svenson v. Mutual Life Ins. Co. of New York, 8 Cir., 87 F.2d 441, 443; New York Life Ins. Co. v. King, 8 Cir., 93 F.2d 347, 353; and proof of circumstances which, while consistent with guilt, are not inconsistent with innocence, will not support a conviction, Spalitto v. United States, 8 Cir., 39 F.2d 782, 784; Van Gorder v. United States, 8 Cir., 21 F.2d 939, 942; Cravens v. United States, 8 Cir., 62 F.2d 261, 274; McClintock v. United States, 10 Cir., 60 F.2d 839, 842."

About all that can be said for the evidence up to this point in the case at bar is that it sufficiently shows that Mr. Ford's 1939 Chevrolet sedan was stolen. Isbell v. U. S., 10 Cir., 1928, 26 F.2d 24; Word v. U. S., 10 Cir., 1952, 199 F. 2d 625. It does not establish that that particular car was the one driven by defendant in Garden City, Kansas, and was transported in interstate commerce thereto, nor that defendant or anyone else knew that it had been stolen.

■ In addition to the foregoing, the defendant took the stand, in his own behalf, which raises the question whether he supplied the necessary additional corroborative proof. The rule requiring a confession to be corroborated by proof of the "corpus delicti" has no application to infra-judicial confessions. 7 Wigmore on Evidence, 3d ed., Sec. 2071, p. 400; Kaye v. U. S., 7 Cir., 1910, 177 F. 147.

Defendant testified as follows:

About the middle of May, 1946, the defendant ran away from an army hospital at South Camp Hood, Texas. He was in custody under a sentence of 10 years by a court martial for theft of camping equipment from a ranch house. He rode a freight train to Woodward, Oklahoma, where 5 or 6 days later he met one Williams. A very few days after defendant met Williams they went to Garden City, Kansas, in Williams' car. Williams was driving a 1939 Chevrolet 2-door, blue or black sedan. There, defendant bought the car with a damaged motor from Williams, for $279.00. Williams did not transfer title to defendant, and told defendant he had to pay a balance to the finance company before he could obtain title. Defendant got acquainted with Walker at Garden City. About August 1st, 1946, defendant drove the Chevrolet to California and from there to Durand, Oregon, where he sold it. Durand is 28 miles from Eugene.

In October, defendant was driving on a highway in Arizona, the police drove up, and defendant ran away. Later he gave himself up. He said he was tired running away from the military authorities and wanted to get back to the hospital. He testified he did not know the car was stolen, and that Walker and not he exchanged the Kansas license plates for the Texas ones. This was done to prevent the finance company from picking up the car.

While most of defendant's testimony is exculpatory, he adds one important fact from which, in the light of all of the circumstances of the case, it is reasonable to infer that the car in the possession of defendant at Garden City, Kansas, was one and the same car stolen from Ford in Ranger, Texas. And, that fact is that defendant took the car to Durand, Oregon, 28 miles from Eugene and there sold it. Ford's car was found in Eugene, Oregon, and Ford was paid for it as the result of a sale by telephone.

■ We think that the foregoing testimony, in the light of the other facts and circumstances in evidence and aliunde the confession, sufficiently establishes all of the elements of the *"corpus delicti"*, namely, (1) that the car was stolen, (2) that it was transported in interstate commerce from Ranger, Texas, to Garden City, Kansas, and (3) by someone who knew it was stolen.

The only direct evidence in the record as to how the car got across the state line and to Garden City, Kansas, is that of the defendant, who testified that Williams drove it there. Defendant denied that he (defendant) drove it and he denied that he knew that it was stolen. Taking this testimony of the defendant at its face value it does him very little good. In our view of the law, for purposes of corroboration the government need only prove the third element of the *"corpus delicti"* by proof that the interstate transportation was by *someone* (not necessarily this defendant) knowing the car to have been stolen. Of course, there are other circumstances in the case which make it more reasonable to infer that defendant was the guilty party.

■ Defendant has told us that Williams and he rode in the car which was stolen to Garden City, Kansas. This was within a very short time after the car was stolen. Recent possession of stolen goods gives rise to a presumption that the possessor is the thief. Dunlop v. United States, 165 U.S. 486, 502, 17 S.Ct. 375, 41 L.Ed. 799; McNamara v. Henkel, 226 U.S. 520, 524, 525, 33 S.Ct. 146, 57 L.Ed. 330; U. S. v. Washington, D.C., 1946, 69 F.Supp. 143.

In the case at bar, therefore, the evidence in corroboration is sufficient from which reasonably to infer that either defendant or Williams stole the car in Ranger, Texas, transported it into Kansas, and in doing so must have had knowledge of the theft he himself had committed. In either view, the government has produced proof of the third element of the *"corpus delicti"* sufficient to corroborate the confession. Then, it was for the jury to decide upon the whole of the evidence whether the government had

proved all elements of the offense and defendant guilty beyond a reasonable doubt. And the jury chose to disbelieve defendant's story in a number of particulars. (Let it be noted that in the case of Forte v. United States, supra, the government had waived the presumption which is available to it here.)

Among the more important facts which we think support our conclusions are the following:

1. The car was stolen at Ranger, Texas, on or about May 8, 1946.

2. Defendant, who was under a 10-year court martial sentence, ran away from Camp Hood, Texas, about the time the car was stolen.

3. Defendant was driving a car of the same general description, the same make and year, in Garden City, Kansas, near the end of May. He changed the color of the car. The Texas license plates were taken off and Kansas plates put on it, as defendant claimed so the finance company would not pick it up. And defendant did not have title to the car.

4. Defendant's possession of the car was within a short time, i.e. three weeks at most after the theft.

5. Defendant sold the car near Eugene, Oregon.

6. The stolen car was found near Eugene, Oregon, and the owner, Ford, sold it to a second-hand dealer there and was paid $450.00 for it.

■ The government, to corroborate the confession, need not prove the "corpus delicti" beyond a reasonable doubt nor even by a preponderance of the evidence. The judge's ruling to admit the confession in evidence and to allow the case to go to the jury is preliminary and in the exercise of the general principle of the judicial function. It is enough for this purpose if the evidence of the "corpus delicti" is such as fairly and reasonably to warrant a finding that the car was stolen and that it was transported in interstate commerce by someone who knew it was stolen. We think the evidence sufficient for this purpose.

■ One further point raised by the record in this case is whether the evidence of the "corpus delicti" should be put in before a confession is received in evidence. 7 Wigmore on Evidence, Sec. 2073, p. 404 says: "That the evidence of the 'corpus delicti' should be put in before a confession is certainly good practice, and is occasionally said to be the rule; but the better view is that the trial judge may determine the order of this evidence, on the general principles otherwise prevailing."

Defendant's confession, so far as material here, was as follows:

"My name is Eldred Clifton Manning. I was born at Nimrod, Eastland County, Texas, on August 6th, 1914. I am also known under the names of Earl C. Hall and Earl C. Davis.

"About the middle of May of 1946, I stole a 1939 Chevrolet sedan in Ranger, Texas. I drove this car to Garden City, Kansas, where I worked in the wheat harvest for about two months. In July of 1946, Agatha Walker and her two children, ages eight months and two years, accompanied me and we drove this Chevrolet to Springfield and Eugene, Oregon. I sold this Chevrolet to a man whose name I cannot recall, who lives about six miles from Eugene, Oregon, for $700."

■ We think the extrinsic evidence taken in connection with this confession was sufficient to take the case to the jury and entitled the jury to find the defendant guilty beyond a reasonable doubt.

Again, we give the defendant the benefit of the doubt. His counsel at no time moved the trial court for a directed verdict or a judgment of acquittal because of the insufficiency of the evidence. We do not decide the appeal upon this ground. We have examined the whole of the evidence and conclude that if timely motion had been made it would have been without merit.

Another point made by the appellant is that the best evidence rule required the certificate of title of the vehicle to be produced to establish ownership. We think the records disclose that a proper foundation was laid for the admissibility of the secondary evidence. The owner of the car, Mr. Ford, was asked whether he had in his possession a certificate of title evidencing the ownership of the car. His response was, "I don't have the certificate of title". The fact of ownership of the car was proved by the owner's testimony. The description of the car was shown by photostatic copy of a highway license, together with the testimony of the owner and his wife. All of this was received without objection by defendant's counsel.

Finally, appellant relies upon Cox v. United States:

"Where it clearly appears in a criminal case that a defendant has been convicted of an offense which the evidence fails to show was committed, the error of submitting the case to the jury for determination is so plain and vital that this court is at liberty to and will reverse even in the absence of a proper motion and exception, not because the defendant has a right to demand a reversal, but solely in the public interest and to guard against injustice." Sanborn, Circuit Judge, in Cox v. United States, supra [96 F. 2d 43], citing Wiborg v. United States, 163 U.S. 632, 658, 16 S.Ct. 1127, 1197, 41 L.Ed. 289; Ayers v. United States, supra, 8 Cir., 58 F. 2d 607, 609, 610.

This record indicates that defendant was not as well represented at the trial as he might have been. His counsel failed to make objections to the admission of evidence, failed to make timely motions for a judgment of acquittal, and by putting defendant on the stand supplied essential missing elements of the *"corpus delicti"*, without which his conviction could not stand. However, we have been at some pains to review the record as though proper motions had been filed, and proper objections had been made. Though poorly advised, the defendant cannot be relieved of the consequences of his decision to take the stand.

We do not believe that we have here a case in which the defendant has been convicted of an offense which the evidence fails to show was committed, and the rule defendant seeks to invoke is inapplicable.

The judgment is affirmed.