Homer Jefferson FRENCH, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 15438.

United States Court of Appeals
Fifth Circuit.

April 18, 1956.

Rehearing Denied May 10, 1956.

738

Malcolm E. Lafargue, Shreveport, La., for appellant.

E. V. Boagni, Asst. U. S. Atty., T. Fitzhugh Wilson, U. S. Atty., Shreveport, La., for appellee.

Before BORAH, TUTTLE and BROWN, Circuit Judges.

BORAH, Circuit Judge.

Appellant was convicted on a ten-count indictment for falsely making and forging five narcotics prescriptions and for uttering and publishing the same as true, all in violation of 18 U.S.C.A. § 494. From the judgment and sentence which were entered upon the jury verdict, defendant has appealed.

Appellant first contends that it was error to convict him upon confessions uncorroborated by proof of the *corpus delicti.* He makes the broad claim that to prove the *corpus delicti* the evidence aliunde the confession must establish every essential element of the offense charged including the connection of the accused with the crime, that is, his identity as the criminal. We do not at all agree. On the contrary, we share the view of most American courts that the phrase *"corpus delicti"* includes but two elements: first, the fact of an injury or loss; and secondly, the fact of *somebody's* criminality as the cause of the injury or loss. Furthermore, Opper v. United States, 348 U.S. 84, 93, 75 S.Ct. 158, 99 L.Ed. 101, 45 A.L.R.2d 1308, makes it clear that corroborative evidence need not be sufficient, independent of the confessions of the accused, to establish these two elements which constitute the *corpus delicti.* Indeed, it is necessary only for the Government to introduce substantial independent evidence which would tend to establish the trustworthiness of the confession. And when this requirement is met, such independent evidence thus serves the dual function of tending to make the confession reliable, while also establishing independently the other necessary elements of the crimes charged. It is therefore sufficient if the corroboration supports

the facts sufficiently to justify a jury inference of their truth. Those facts plus the other evidence besides the confessions must, of course, be sufficient to find guilt beyond a reasonable doubt.

■ To establish the *corpus delicti* of the offenses here charged, the Government was obliged to prove that the narcotics prescriptions were forged and uttered and published as true by *someone* with an intent to defraud. In fulfillment of this obligation, the Government adduced evidence, independent of the confessions to show that Dr. French's name was signed on the five prescriptions by *someone* other than Dr. French himself, and that the prescriptions were obtained from the filled prescription files at the North Side Pharmacy and on their faces, each bore all the usual markings of filled prescriptions. From these facts the jury were authorized to infer an intent to defraud, for it is obvious that the utterance of a forged prescription tends directly to defraud the Government in that it frustrates the administration of the laws of the United States relating to the dispensing of narcotics. Johnson v. Warden, 9 Cir., 134 F.2d 166, 167; Hart v. Squier, 9 Cir., 159 F.2d 639, 640. Thus, the evidence not only meets the requirements set forth in the Opper case, but also the more stringent tests heretofore followed in most American jurisdictions, in that this independent evidence alone clearly established the *corpus delicti*. United States v. Jones, C.C., 10 F. 469, 470; Flower v. United States, 5 Cir., 116 F. 241, 242; Daeche v. United States, 2 Cir., 250 F. 556, 571; Mangum v. United States, 9 Cir., 289 F. 213, 216; Ercoli v. United States, 76 U.S.App.D.C. 360, 131 F.2d 354, 356; Manning v. United States, 10 Cir., 215 F.2d 945, 947; and United States v. White, 2 Cir., 223 F.2d 675.

■ In addition to the foregoing, a narcotics agent testified that he interviewed appellant prior to his arrest, and that appellant, after having been forewarned that any statement which he made could be used against him in court, freely and voluntarily confessed that he had committed the crimes. The agent testified that appellant stated that he "had written all of these prescriptions" and that he "had had them filed himself" but "on a few occasions he had had a Negro to take the prescriptions in and have them filled for him." [1] The agent further testified that thereafter, and subsequent to his arrest and after having been warned a second time that his statements could be used against him in court, appellant made another voluntary statement in which he admitted that he had written each and every one of the numerous prescriptions exhibited to him, including the five indictment prescriptions.[2] From the

1. The following is a portion of the testimony of the narcotics agent:

"I handed to the defendant [a large number of narcotics prescriptions] at that time, and asked him what he could tell me about these prescriptions, and he took them, and gave them a cursory examination, and told me that he had written them, or that he had written all of these prescriptions * * *" * * * "He said that he had written all of these, and then I asked him whether he had had them filled and he said, yes, that he had had them filled himself, but on a few occasions that he had had a Negro to take these prescriptions in and have them filled for him." * * * "Following that admission I asked him whether he realized that he had violated the law, and he said 'Yes'. I then told him that under the circumstances I would have to place him under arrest, and we placed him under arrest."

2. The narcotics agent also testified as follows with reference to the second statement by the appellant:

"* * * I proceeded by myself up to the floor where the jail is located in the parish jail and again talked with the defendant. When I got there I had these prescriptions * * * with me." * * * "I requested the jailer to have the defendant brought out so that I could see him * * * and I again advised the defendant that he did not have to give a statement if he did not want to do so, and I told him too that any statement he did make to me could be held against him in court later at a future date, and I again handed him these prescriptions and * * * told him I wanted him if he would do so to go through these

foregoing we conclude that the independent evidence was adequate to constitute corroboration of these confessions and also to establish the *corpus delicti*. The jury were, therefore, free to consider the confessions in connection with all of the other evidence in the case and to decide whether the guilt of the appellant had been established beyond a reasonable doubt. By their verdict they found that it was, and we are of opinion that their finding was supported by substantial evidence.

Appellant further complains that the evidence was insufficient to support the verdict and consequently that the court erred in denying his motion for acquittal. In support of this contention appellant reargues the proposition that there was no evidence that he forged or uttered or published as true the five prescriptions, and, in addition, contends that the testimony of the Government's chief witness was untrustworthy. This assignment hardly merits discussion in view of what we have just said. And to which we may add the further observation that this court is not charged with the duty of considering the credibility of witnesses or the weight of the evidence.

Another error claimed is that the remarks of the United States Attorney in his argument to the jury were inflammatory, prejudicial and constituted reversible error. We gain no such impression from our reading of the record. While it is true that Government counsel did depart from the record on immaterial matters, and did overstep the bounds of propriety in making reference to the witness Denoux's refusal to testify, the court, though not requested to do so, admonished counsel and instructed the jury to disregard his remarks. It cannot therefore be said on the whole case that any substantial rights of appellant were affected by the action of the court and of counsel for the Government, and in our

opinion, the manner in which the court dealt with the situation was a proper exercise of its discretion and duty.

The three remaining assignments of error relate to the admissibility of certain evidence. First it is contended that the court erred in admitting testimony to the effect that a statement had been made by appellant to the narcotics agents as to his addiction and use of narcotic drugs. For answer we deem it sufficient to say that the statement was not a confession, but at most was an admission of a relevant and material fact and it was rightly received in evidence.

Appellant next contends that the court erred in permitting the Government to introduce in evidence as a standard of handwriting comparison certain coroner's reports bearing the proven signature of Dr. J. T. French, when these documents were not in evidence for any other purpose and formed no part of the pleadings in the case. The appellant does not and could not rightly claim that he was prejudiced by the contents of these reports and the ground of objection upon which he relies does not find support in the better reasoned authorities. Short v. United States, 8 Cir., 221 F. 248; Wigmore on Evidence, 3rd Ed., § 2016; 20 American Jurisprudence, Evidence, § 745. We are in no doubt that they were properly received in evidence under 28 U.S.C.A. § 1731.

Finally, appellant complains of the court's refusal to admit his service record in the United States Army as evidence of his good character. In ruling on the admissibility of this evidence the court was of opinion that the jury was entitled to know that appellant had been honorably discharged from the United States Army approximately eight years prior to the date upon which the alleged offenses occurred. But the court concluded that the exhibit as a whole was not

prescriptions one by one, look at them good, and tell me whether they were prescriptions that he had actually written himself. He did that. He took sufficient time to go over each and every one of the prescriptions and upon completing that, and upon his stating that he had written them, I left the jail."

admissible because it was not permissible to show good character by evidence of particular and specific facts, such as battle citations and the awarding of the Purple Heart. In the colloquy between court and counsel, the Government admitted that appellant had been honorably discharged and the jury was so instructed. We think the trial judge was right for the reasons which he gave. In any event, the rule is well-established that appellate courts will rarely and only on clear showing of prejudicial abuse of discretion disturb the rulings of trial courts on the admissibility of this type of evidence. Here, no such showing has been made. See Michelson v. United States, 335 U.S. 469, 480, 69 S.Ct. 213, 93 L.Ed. 168.

Affirmed.

BROWN, Circuit Judge (specially concurring).

I concur in the result and all that is said except that which relates to the appellant's contention that proof of the *corpus delicti* must establish, as an essential element of the offense charged, the identity of the criminal as to which Judge BORAH states: "We do not at all agree. On the contrary, we share the view of most American courts that the phrase '*corpus delicti*' includes but two elements: first, the fact of an injury or loss; and secondly, the fact of *somebody's* criminality as the cause of the injury or loss. * * *," and then cites Opper v. United States, 348 U.S. 84, 93, 75 S.Ct. 158, 99 L.Ed. 101, 45 A.L.R.2d 1308.

I do not think it is open to us to join with the "most" American courts as on the same day the Supreme Court handed down Opper v. United States, supra, it decided Smith v. United States, 348 U.S. 147, 75 S.Ct. 194, 198, 99 L.Ed. 192. Smith categorically accepting the teaching of Forte (Forte v. United States, 68 App.D.C. 111, 94 F.2d 236, 127 A.L.R. 1120) which it cites, plainly states concerning crimes producing no tangible injury, "As to this [intangible] crime, it cannot be shown that the crime has been committed without identifying the accused. * * * We choose to apply the rule, with its broader guarantee, to crimes in which there is no tangible *corpus delicti*, where the corroborative evidence must implicate the accused in order to show that a crime has been committed. * * * [citing cases]."

Nor does Opper seek to undo that which Smith had just done. Smith involved the question as to *what* was the *corpus delicti* (one, two, or three elements) and the nature of the corroboration needed once that legal point was determined. Opper was concerned only with the latter point of corroboration of the crime—payment of money to influence a Government Agent—one of a type declared by Smith to be "an intangible one." When it came to corroboration of of the element of the accused's *personal* connection with the crime, the court found this in the facts stating, "It is clear that there was substantial independent evidence to establish directly the truthfulness of petitioner's admission that *he* paid the Government employee money." [Emphasis supplied].

Since Smith cites and applies the triple element test of Forte, the dissent of Mr. Justice Douglas in Smith and Opper shows, I think, that at least he thought the Court was applying Forte in part, but was wrong in not going the next step with it on the quantum of corroboration required.