Robert Henry **LANDSDOWN**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 21360.

United States Court of Appeals
Fifth Circuit.

June 23, 1965.

Bernard S. Dolbear, New Orleans, La., for appellant.

John C. Ciolino, Asst. U. S. Atty., New Orleans, La., for appellee.

Before TUTTLE, Chief Judge, and JONES and ANDERSON,* Circuit Judges.

JONES, Circuit Judge:

This is an appeal from the conviction of the appellant, Robert Henry Landsdown, for interstate transportation of a firearm after having been convicted of a felony.[1] Landsdown and a traveling companion, one Tisdale, were arrested on August 8, 1963 by Louisiana State Troopers in response to reports from an observer that they had been seen in a bar brandishing a pistol and attempting to sell some jewelry, and a radio call concerning a jewel theft that had recently occurred. The troopers were provided with descriptions generally fitting Landsdown, Tisdale, and the car in which they were traveling. The evidence is not clear concerning what charges were placed against Landsdown and Tisdale,[2] but they were taken to the Slidell police station for questioning.

Upon their arrival at the police station, Landsdown consented to a search of his automobile, and Tisdale assisted in the recovery of a twenty-two caliber revolver, which was located behind the dashboard. Behind the kick-panel on the driver's side, the state officers, with Tisdale's assistance, found a collection of tools. The state officers testified that after the recovery of these items, Landsdown at first denied knowledge and then admitted ownership of the pistol and the tools, and stated that he had transported them from Mississippi. Landsdown denied making this admission.. The officers also testified that Landsdown had stated at the police station that Tisdale had nothing to do with the articles found in the car. The testimony of the officers indicated that after the arrest, and prior to Landsdown's statements, he was advised of his right to remain silent and to secure the services of an attorney, and of the availability of a telephone for his use. There was also testimony showing that Landsdown's statements were not induced by any promises or threats. None of Landsdown's statements was reduced to writing at that time. Landsdown and Tisdale were booked on state charges and transferred to the Saint Tammany Parish jail.

On August 16, 1963, an agent of the Alcohol and Tobacco Tax Division of the Treasury Department was notified of the apprehension of Landsdown and Tisdale. He proceeded to the parish jail to interview Landsdown and Tisdale as to possible violations of Federal law. Landsdown repeated to the Federal officer the essence of his previous statements made to the state officers. Tisdale denied having had any knowledge of the pistol until after their arrival in Louisiana.

On August 21, a complaint was filed before a United States Commissioner charging Landsdown and Tisdale with violation of 15 U.S.C.A. § 902(e). Federal officers placed them in custody and took them to New Orleans. In the office of the Alcohol and Tobacco Tax Division, after having been fully advised of his constitutional rights, Landsdown again

---

* Of the Second Circuit, sitting by designation.

1. 15 U.S.C.A. § 902(e) provides that "It shall be unlawful for any person * * * who has been convicted of a crime punishable by imprisonment for a term exceeding one year * * * to ship, transport, or cause to be shipped or transported in interstate or foreign commerce any firearm or ammunition."

2. The bill of particulars filed by the government states that Landsdown and Tisdale were charged by the state authorities with auto theft and possession of burglary tools, but the state officers testified that the charges were possession of burglary tools and "investigation" of carrying a concealed weapon.

admitted ownership and interstate transportation of the pistol, and exculpated Tisdale of any complicity in the offense. He also admitted having been previously convicted of several felonies. This statement was reduced to writing,[3] but Landsdown refused to sign it until Tisdale was released. On the same day, both defendants were taken before the U. S. Commissioner, where Landsdown waived, and Tisdale demanded, a preliminary hearing. The preliminary hearing was held on August 23, and the complaint against Tisdale was dismissed on motion of the government. Landsdown thereafter signed the written statement. The written statement was introduced into evidence and read to the jury at the trial over Landsdown's objection.

At the trial, Landsdown testified that he did not know the pistol was in the car until Tisdale produced it for the officers at the police station. He stated that he and Tisdale had argued in Mississippi about Tisdale's desire to take a pistol on the trip, and he thought the gun had been left in Mississippi. He denied having made oral statements at the police station, and stated that he signed the

3. "I have been advised by Mr. J. R. Kalister that under the provisions of the Federal Constitution I cannot be compelled to testify against myself and that anything I say can be used against me in a criminal prosecution if I stand trial.

"My name is Robert Henry LANDSDOWN, I am 36 years of age, divorced, and until July 31, 1963, resided at 125 W. 8th St., Hattiesburg, Miss. I have served terms in State Penitentaries [sic] at Wyoming, Arkansas and Idaho for the crime of burglary and two terms at the Federal Penitentary, [sic] Atlanta, Georgia for violation of the Dyer Act.

"Sometime during June of 1963 I purchased a .22 calibre revolver from a white man at Hattiesburg, Miss., it was during the evening hours and I was drinking a beer at the Bypass Bar located Hattiesburg, Miss., when an unknown white man entered the bar and asked me after some conversation if I knew anyone interested in purchasing a .22 calibre pistol. I asked him how much he wanted for it and he replied $15.00—I told him I would like to see it and he took me to his car and showed me the pistol. I told this white man that I would buy the gun but that I wanted a bill of sale so I could proove [sic] that I had purchased the gun and hadn't stolen it. This bill of sale is presently in the hands of an associate of mine who resides at Hattiesburg, Miss.

"On August 8, 1963 while in company with Henry Donnie TISDALE I left Meridan, [sic] Miss., and drove in my 1953 Plymouth to Slidell, La. At this time the above .22 calibre was in my car—Henry Donnie TISDALE did not know the revolver was in the car until after we had arrived at Slidell, La.

"This same date, August 8, 1963, at approximately 10:00 PM Henry Donnie TISDALE and I were arrested at the White Kitchen, located US Highway 90, St. Tammany Parish, Louisiana. The arresting officers found the above mentioned .22 Calibre revolver in my car after Henry Donnie TISDALE told them it was located up under the dash board.

"I purchased this revolver with the intention of selling it to someone and maybe making a couple of dollars on the deal.

"I related to Mr. Kalister the facts in the foregoing statement consisting of two pages which I have initialed or signed. I have been given an opportunity to make corrections, and I have initialed each correction made. This statement is true and correct.

"I have made this statement of my own free will, without being threatened, injured or intimidated and without having been promised any reward or immunity.

(Signed)  ROBERT HENRY LANDSDOWN
Robert Henry LANDSDOWN

"Subscribed and sworn to before me this 21st day of August 1963.
    (Signed)  J. R. KALISTER
J. R. KALISTER, Inv., A&TT.
"Witness:
    (Signed)  H. C. VIDRINE, Jr.
H. C. VIDRINE, Inv., A&TT."

written statement because of a promise that Tisdale would be released, and because he believed the revolver found in the car, which the officers had not permitted him to see, was an automatic that he had purchased in Mississippi. He testified that he did not know the gun found in the car was a revolver until he was furnished a copy of the information at the time of his arraignment. He denied ownership of the revolver. His stated reason for seeking Tisdale's release was that Tisdale had promised to return to Mississippi to obtain evidence of Landsdown's innocence.

■ We are first called upon to decide whether the government sustained its burden of proof of the corpus delicti before the admission into evidence of Landsdown's extra judicial confessions and admissions. Landsdown contends that there was no independent evidence, apart from his statements, that the pistol found in his automobile was ever outside the state of Louisiana. Consequently, the argument proceeds, the statements should not have been admitted because an essential element of the offense, interstate transportation of a firearm, was not proven without the aid of the statements. Although this position has found some support [4] we think it overlooks the basic purpose of the rule requiring corroboration of an extrajudicial confession before its admission into evidence. The justification for such a rule was well expressed in Opper v. United States, note 4 supra, where it was said:

> "In our country the doubt persists that the zeal of the agencies of prosecution to protect the peace, the self-interest of the accomplice, the maliciousness of an enemy or the

aberration or weakness of the accused under the strain of suspicion may tinge or warp the facts of the confession." 348 U.S. 84, 89–90, 75 S.Ct. 158, 162.

It is thus a sound principle that requires incriminatory statements of questionable reliability made outside the presence of a judge to be corroborated by substantial, independent evidence before their admission into evidence against the accused. But the natural suspicion surrounding such statements does not justify a rule which would require, not only such corroboration ·as would lend credence to the statements of the accused, but also substantial evidence of every element of the offense with which he is charged. Such a rule would go beyond the requirement of crediting the confession and impose an impediment to effective law enforcement. We therefore prefer the less stringent and more reasonable requirement of corroboration of the statement itself, rather than proof of every element of the crime charged. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441; Smith v. United States, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192; French v. United States, 5th Cir. 1956, 232 F.2d 736; see Manning v. United States, 10th Cir. 1954, 215 F.2d 945.

■ In the instant case, there was substantial, independent evidence, apart from Landsdown's extrajudicial statements, that Landsdown had traveled from Mississippi, that he had purchased a gun in Mississippi, that he and Tisdale were seen in a bar in Louisiana brandishing a gun, that a gun was found in the car in Louisiana, and that Landsdown was a convicted felon.[5] The fact

---

4. See Opper v. United States, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (dissenting opinion); Forte v. United States, 1937, 68 App.D.C. 111, 94 F.2d 236, 127 A.L.R. 1120. The Forte case has been overruled by Bray v. United States, 1962, 113 U.S. App.D.C. 136, 306 F.2d 743.

5. The presence of this evidence distinguishes this case from such cases as Yarbrough v. United States, 10th Cir. 1962,

309 F.2d 936 and Kelly v. United States, 10th Cir. 1957, 246 F.2d 864, cited by Landsdown, in which there was little or no independent evidence establishing either the elements of the offense or the trustworthiness of the extrajudicial confession. The case of Tyler v. United States, 10th Cir. 1963, 323 F.2d 711, also relied upon by Landsdown, was concerned with the sufficiency of the evi-

that some of the evidence of the corpus delicti was in the form of Landsdown's own testimony does not detract from its effectiveness in corroborating his extra-judicial confessions and admissions, for the requirement of corroboration does not apply to infrajudicial statements made by the accused. Manning v. United States, 10th Cir. 1954, 215 F.2d 945; Kaye v. United States, 7th Cir. 1910, 177 F. 147; 7 Wigmore, Evidence § 2071 at 400 (3d Ed. 1940). The independent evidence fell short of establishing all the elements of the offense in only one respect—it did not prove that the gun found in the automobile in Louisiana was the same gun that Landsdown had purchased in Mississippi. For the reasons stated above, we believe that proof of this element was not necessary in order to satisfy the threshold requirement of trustworthiness of the extrajudicial confession for purposes of admissibility, and the statements were properly admitted into evidence for a jury determination of their truth.

▄▄▄ Landsdown contends that the firearm and tools that were taken from his car should have been excluded from evidence because they were the fruits of an unlawful search and seizure. In view of the trial court's finding that Landsdown consented to the search, the substantial evidence of such consent in the record, and the total absence of any evidence indicating that Landsdown did not consent or that his consent resulted from coercion or duress, either direct or indirect, we need not consider whether the arrest, search and seizure would have been legal in the absence of Landsdown's consent.[6] The question whether a defendant has consented to a search and seizure of his property is one of fact, to

be determined in the first instance by the trial court. United States v. Page, 9th Cir. 1962, 302 F.2d 81; see United States v. Mitchell, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 140. On appeal from a judgment of conviction, the evidence is to be considered in the light most favorable to the government. Newsom v. United States, 5th Cir. 1964, 335 F.2d 237; United States v. Brown, 2d Cir. 1956, 236 F.2d 403. Viewed in that light, the evidence discloses that when first confronted by the police and asked to accompany them, Landsdown replied that he did not mind, "anything to get this straightened out." When Landsdown and the officers reached the police station, the officers asked if it was all right if they searched his car and he said yes, that he "didn't have anything to hide." On the face of this record, we believe that the government sustained its burden of proof, by clear and convincing evidence, that Landsdown's consent was voluntary. Despite the fact that Landsdown testified on two occasions during the trial, there is absolutely no testimony or other evidence that his consent to the search was not genuine or was reluctantly given. Compare Hart v. United States, 5th Cir. 1963, 316 F.2d 916, 917 with Pekar v. United States, 5th Cir. 1963, 315 F.2d 319. See also United States v. Page, 9th Cir. 1962, 302 F.2d 81; United States v. Dornblut, 2d Cir. 1958, 261 F.2d 949, cert. den., 360 U.S. 912, 79 S.Ct. 1298, 3 L.Ed.2d 1262; United States v. MacLeod, 7th Cir. 1953, 207 F.2d 853. Contra, Higgins v. United States, 1954, 93 U.S.App.D.C. 340, 209 F.2d 819; Judd v. United States, 1951, 89 U.S.App.D.C. 64, 190 F.2d 649. Consequently, the admission of the evidence obtained by the search and seizure was not erroneous.

dence necessary for conviction, and not whether there was sufficient evidence to justify the admission of an extrajudicial confession.

6. For the same reasons, it is not necessary that we determine the merits of the government's assertion that the consent to and active participation in the search by Tisdale can be imputed to Landsdown as

a waiver of Landsdown's constitutional rights. Cf. Roberts v. United States, 8th Cir. 1964, 332 F.2d 892; United States v. Eldridge, 4th Cir. 1962, 302 F. 2d 463, United States v. Sferas, 7th Cir. 1954, 210 F.2d 69, cert. den., Skally v. United States, 347 U.S. 935, 74 S.Ct. 630, 98 L.Ed. 1086.

Landsdown next complains of the admission of testimony regarding various incriminatory statements made by him prior to trial, and contends that evidence of such statements should have been excluded because of the untrustworthiness of the confessions and admissions, and because the circumstances attending the execution by Landsdown of the written confession created an "air of bargaining." The issue of the trustworthiness of the confessions, for purposes of admissibility, was resolved in our disposition of the corpus delicti issue. With respect to the so-called "bargaining" atmosphere surrounding the execution of the written confession, we need not decide whether such inducement, if any there was, rendered the confession inadmissible. Cf. Crawford v. United States, 5th Cir. 1955, 219 F.2d 207, rehearing den., 220 F.2d 352. Any inducement that existed occurred after the confessions were made. If we assume that the government agents were bargaining for anything, the subject of the bargain was merely Landsdown's signature on the written statement, which was essentially a reiteration of Landsdown's four previous oral statements, that had been transcribed in Landsdown's presence by a government agent and acknowledged to be accurate by Landsdown. Disregarding any questions of weight and credibility, which are not presented on this record, the statement would have been admissible even if unsigned. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441. Therefore, the circumstances surrounding its execution did not render admission of the statement prejudicial error.

Landsdown contends that the cumulative effect of the admission of various items of irrelevant and prejudicial evidence denied him a fair trial. Among these are evidence of statements allegedly made by Landsdown at the time of his arrest regarding a "job" he intended to pull in Slidell, frequently repeated characterization, by the prosecutor and government witnesses, of the tools found in Landsdown's car as "burglary tools," and testimony of police officers regarding their reasons for apprehending Landsdown and Tisdale.

The police officers testified, over Landsdown's objection, that Landsdown had stated that he had intended to pull a "job" at a local restaurant and that he possessed what they characterized as a blueprint of the restaurant at the time of his arrest. The so-called "blueprint" was not offered in evidence. The government seeks to justify the admission of this evidence on the basis that it constituted a voluntary admission against interest by Landsdown. We think the government's reliance on this principle is misplaced under the circumstances of this case, for such admissions, although not subject to exclusion on hearsay principles, must nevertheless satisfy the other requirements of competent evidence. 5 Wigmore, Evidence § 1424 (3d Ed.); 20 Am.Jur. Evidence § 545. We fail to perceive any relevance of this highly prejudicial testimony to the elements of the crime charged in the information, and therefore hold that its admission into evidence was erroneous. See Marko v. United States, 5th Cir. 1963, 314 F.2d 595; United States v. Turoff, 2d Cir. 1961, 291 F.2d 864; Sang Soon Sur v. United States, 9th Cir. 1948, 167 F.2d 431.

Over Landsdown's objection, the trial court admitted into evidence various tools [7] that were seized during the search of Landsdown's automobile. These were repeatedly characterized by the prosecutor and government witnesses as burglary tools. The evidence was admitted, according to the trial court, because "the information charges the offense was committed knowingly, and * * * this goes to the question of knowledge." The government contends that the question of the admissibility of such evidence is analogous to admissibility of evidence of

---

7: Among these were an electric drill, bits, an extension cord, a saw, a hammer, and some sort of "spike" and "eye-piece," the nature of which is not revealed by the record.

prior offenses unconnected with that charged in the information, and that such evidence is admissible if it tends to prove an intent to commit the crime charged, citing Ahrens v. United States, 5th Cir. 1959, 265 F.2d 514. In the Ahrens case, the defendant was tried for using interstate telegrams in executing a scheme to defraud. The evidence indicated that the defendant had promised to obtain a loan for a third party and had requested of the party by telegram, advances for expense moneys incident to obtaining the loan. After having obtained the advances, the defendant failed to obtain the loan and was not heard from again by the prospective borrower. Evidence of almost identical circumstances involving defendant and another borrower was admitted on the basis that such evidence was relevant on the question of intent, which was the primary question for the jury.[8]

Even assuming that the admissibility of the tools and the frequent reference to them as burglary tools is analogous to the principle announced in Ahrens and related cases, we do not believe that Ahrens and the multitude of similar cases applying the same principle are controlling in the instant case. The intent necessary for a conviction under 15 U.S.C.A. § 902(e) is the "intent to accomplish the act of transportation across a state line, and the statement of the act itself implies such intent." Braswell v. United States, 10th Cir. 1955, 224 F.2d 706, 709, cert. den., 350 U.S. 845, 76 S.Ct. 86, 100 L.Ed. 752. The ultimate objective once the state line is crossed is of no moment to a prosecution under this statute. Moreover, the Ahrens case is unpersuasive for the further reason that there is a complete lack of similarity

between possession or transportation of "burglary tools", if such they were, and the elements of this offense. We conclude, therefore, because of the prejudicial nature of the continual reference to the "burglary tools" and the lack of relevance that possession of the tools had to the crime charged, that their admission into evidence was erroneous. Giordano v. United States, 6th Cir. 1950, 185 F.2d 524; Fallen v. United States, 5th Cir. 1955, 220 F.2d 946, cert. den., 350 U.S. 924, 76 S.Ct. 213, 100 L.Ed. 808. See White v. United States, 9th Cir. 1961, 294 F.2d 952, cert. den., 375 U.S. 821, 84 S.Ct. 58, 11 L.Ed.2d 55; Pearson v. United States, 6th Cir., 1951, 192 F.2d 681.

In response to examination relative to their reasons for the arrest of Landsdown and Tisdale, the state officers testified that they had received a radio call in connection with attempts to sell some jewelry by two suspects and a burglary complaint that had come in over the telephone. We are urged to hold that the admission of such testimony was erroneous, despite the failure of Landsdown to object. This contention makes necessary a consideration of the plain error rule.[9] We conclude that the introduction of this extraneous and highly prejudicial testimony was "plain error * * * affecting substantial rights." Rule 52(b), supra. See Clark v. United States, 5th Cir. 1961, 293 F.2d 445.

It is well settled that testimony of the type under consideration is inadmissible as hearsay. Abrams v. United States, 1964, 117 U.S.App.D.C. 200, 327 F.2d 898; Nalls v. United States, 5th Cir. 1957, 240 F.2d 707; McCormick, Evidence, § 227 (1954).[10] This kind of tes-

---

**8.** See also, Jencks v. United States, 5th Cir. 1955, 226 F.2d 540, rev'd on other grounds, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103; Cohen v. United States, 5th Cir. 1941, 120 F.2d 139; Weiss v. United States, 5th Cir. 1941, 120 F.2d 472, rehearing den., 122 F.2d 675, cert. den., 314 U.S. 687, 62 S.Ct. 300, 86 L.Ed. 550.

**9.** Fed.R.Crim.P. 52(b) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

**10.** See generally Graham v. United States, 6th Cir. 1958, 257 F.2d 724; Neill v. United States, 8th Cir. 1955, 225 F.2d 174; Brown v. United States, 5th Cir. 1953, 202 F.2d 474; George v. United

timony was held admissible in Busby v. United States, 9th Cir. 1961, 296 F.2d 328, cert. den., 369 U.S. 876, 82 S.Ct. 1147, 8 L.Ed.2d 278, on the theory that it was not hearsay, because it was not admitted to prove the truth of the out-of-court statements, but merely to establish the circumstances that justified the police officer's investigation of the defendant. Although this may have been correct under the circumstances of the cited case, no proper purpose would be served here by the admission of such irrelevant testimony which was clearly prejudicial to the accused. Even though such testimony might have some relevance on a motion to suppress evidence, conducted out of the jury's presence, it has no place in the trial itself, and its admission, during the trial of a convicted burglar was error, when proof of the prior convictions was necessarily introduced into evidence as an element of the crime charged.

Having decided that the admission of the evidence described above was error, we consider whether such error requires a reversal of Landsdown's conviction. We are constrained to hold that it does, and that Landsdown is entitled to a new trial. We have carefully examined the record and conclude that there was ample evidence to justify submission of the case to the jury. But that is not the sole test when errors have occurred in the conduct of the trial that deny the defendant's right to be fairly tried for the crime charged in the information. Roberson v. United States, 5th Cir. 1956, 237 F.2d 536, cert. den. 356 U.S. 919, 78 S.Ct. 704, 2 L.Ed.2d 715. The criterion for determination of the effect of such error was stated by the Supreme Court in Kotteakos v. United States, 328 U.S. 750, 764–765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557, 1566–1567:

"[I]f one cannot say, with fair assurance, after pondering all that happened without stripping the er-roneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand."

In the instant case, although the evidence of Landsdown's commission of the crime charged was substantial, it was not uncontroverted. Landsdown took the stand and told a plausible story, which, if believed, would support a jury determination that the gun found in his car was not the gun that he had purchased in Mississippi. His version of the facts was not so patently absurd that we could hold that reasonable men could not believe it. See United States v. Cianchetti, 2d Cir. 1963, 315 F.2d 584; Ahlstedt v. United States, 5th Cir. 1963, 315 F.2d 62, cert. den. 375 U.S. 847, 84 S.Ct. 101, 11 L.Ed.2d 74. Whether the revolver was transported interstate, an essential element of the offense, was a contested fact issue, and it may well be that this issue was resolved against Landsdown because of the inadmissible evidence showing or intended to show other unrelated criminal offenses committed or planned by Landsdown. In view of the repeated, successful attempts of the government to paint the defendant in that light, we do not think the cumulative effect of these errors was erased from the jury's thoughts by the reference by the trial court to the fact that Landsdown was not being tried for burglary. See Hawkins v. United States, 358 U.S. 74, 79 S.Ct. 136, 3 L.Ed. 2d 125; White v. United States, 9th Cir. 1961, 294 F.2d 952, cert. den. 375 U.S. 821, 84 S.Ct. 58, 11 L.Ed.2d 55; Scott v. United States, 5th Cir. 1959, 263 F.2d 398.

States, 1942, 75 U.S.App.D.C. 197, 125 F.2d 559; Smith v. United States, 1939, 70 App.D.C. 255, 105 F.2d 778; Mattson v. United States, 8th Cir. 1925, 7 F.2d

427; State v. Kimble, 214 La. 58, 36 So.2d 637 (1948). Cf. Lufkin v. State, 144 Tex.Cr.R. 501, 164 S.W.2d 709 (1942).

Landsdown was informed against for interstate transportation of a firearm after having been convicted of a felony. We think he should be tried for that crime, and that crime alone, for "[h]owever depraved in character, and however full of crime [his] past [life] may have been, the [defendant was] entitled to be tried upon competent evidence, and only for the offense charged." Boyd v. United States, 142 U.S. 450, 458; 12 S.Ct. 292, 295, 35 L.Ed. 1077, 1080.

We have examined the appellant's remaining contentions, and find them to be without merit. The judgment is reversed and the cause remanded for a new trial.

Reversed and remanded.